DAMOORGIAN, J.
Philip Morris USA, Inc. (“PM USA”) appeals the trial court’s final judgment entered in favor of Elaine Hess, as surviving spouse and personal representative of the estate of her deceased husband, Stuart Hess. PM USA raises three issues on appeal. First, it contends that the trial court erred in denying its motion for judgment as a matter of law on the fraudulent concealment claim because it was barred by the statute of repose. Next, it argues that the trial court misapplied the Engle[1] findings. Lastly, it submits that the trial court erred in denying its motion to remit the punitive damages award because it was excessive under federal and Florida law. Mrs. Hess cross appeals the trial court’s final judgment to the extent it reduced the compensatory damages award based on the comparative fault of the decedent Mr. Hess. She argues that the substance of her action was the intentional tort of fraudulent concealment, precluding application of the comparative fault statute. See § 768.81(3)-(4), Fla. Stat. (1993). We affirm with respect to the application of the Engle findings. We reverse the denial of PM USA’s motion for judgment as a matter of law on the fraudulent concealment claim, upon which the punitive damages award was based. Because we reverse for entry of judgment in PM USA’s favor on the fraudulent concealment claim, PM USA’s argument on appeal regarding the denial of its motion for remittitur is rendered moot as is Mrs. Hess’s issue on cross appeal regarding the trial court’s reduction of the compensatory damages award.[2]
The instant case commenced as one of the Engle progeny cases. See Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006). By way of background, Mrs. Hess filed a complaint against PM USA for strict liability, negligence, conspiracy to commit fraud, and fraudulent concealment, seeking to recover damages for the death of her husband, a longtime smoker.[3] The complaint admitted that Mr. Hess bore some measure of fault for his smoking-related injuries and death.
The case proceeded to trial in two phases and in the manner we approved in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011). Id. at 714. In the first phase, the jury was required to determine whether Mr. Hess was a member of the Engle class, i.e. whether he was addicted to PM USA’s cigarettes, and, if so, was his addiction a legal cause of his death. Mrs. Hess presented substantial evidence of Mr. Hess’s smoking history and medical background, as well as expert testimony regarding his addiction in this phase. Testimony also indicated that Mr. Hess’s cigarette of choice was PM USA’s Benson & Hedges brand.[4] Furthermore, she presented evidence regarding the tobacco companies’ strategy to conceal the *257 addictive nature of nicotine from smokers. Pursuant to the parties’ stipulations, the jury was instructed that (i) cigarettes containing nicotine are addictive; (ii) smoking cigarettes causes lung cancer; (iii) Mr. Hess’s lung cancer was caused by PM USA’s cigarettes containing nicotine; and (iv) Mr. Hess died of lung cancer. At the conclusion of this phase, the jury found that Mr. Hess was addicted to cigarettes containing nicotine, and his addiction was the legal cause of his death.
In the second phase of trial, limited testimony was presented to the jury from Mrs. Hess and her son, David Hess, regarding Mr. Hess’s exposure to cigarette advertising, his knowledge of the health risks posed by smoking, and the emotional loss they suffered as a result of Mr. Hess’s death in 1997 at the age of 55. At the conclusion of evidence in this phase, the trial court instructed the jury that the strict liability, negligence, and fraudulent concealment Engle findings were binding on it.[5] It also explained to the jury that the complaint had admitted Mr. Hess bore some measure of responsibility and instructed that his behavior was “a concurring legal cause in combination with acts or omissions of Philip Moms USA of his smoking related injuries and death.” The trial court also instructed:
The conduct of Stuart Hess and Philip Morris USA may be considered a legal cause if it directly and in natural and in continuance (sic) sequence produces or contributes substantially to producing the loss so that it can reasonably be said that but for that conduct, the loss would not have occurred. Accordingly, you must assign some percentage of responsibility on your verdict form to Mr. Hess.
In regard to the fraudulent concealment claim, the trial court instructed the jury:
You must determine whether Stuart Hess relied to his detriment on any statements made by Philip Morris USA that omitted material information. If the greater weight of the evidence does not support the Plaintiffs claim on this issue, then your verdict should be for the Defendant on this claim.
Relating to that claim, Stuart Hess’ reliance to his detriment on any statements by Philip Morris USA that omitted material information is a legal cause of loss if it directly and in natural and continuance (sic) sequence produces or contributes substantially to producing such loss so that it can reasonably be said that but for Stuart Hess’ reliance, the loss would not have occurred.
In order to be regarded as a legal cause of loss, Stuart Hess’ reliance on omitted statements to his detriment need not be the only cause. Stuart Hess’ reliance on omitted statements to his detriment may be a legal cause of loss ... even though it operates in combination with the act of another, some natural cause or some other cause.
The verdict form in this second phase directed the jury as follows:

By answering the following questions, you will determine the damages that ELAINE HESS and DAVID HESS sustained as a result of the incident in question. In determining the amount of damages, do not make any reduction 
*258
because of the fault of the parties. The Court, in entering judgment, will make an appropriate reduction of the damages awarded.

It then asked the jury to (i) state the percentage of responsibility it charged to PM USA and Stuart Hess; (ii) state the amount of damages sustained by Mrs. Hess due to pain and suffering and the loss of her husband’s companionship and protection; (iii) state the amount of damages sustained by David Hess due to pain and suffering and the loss of parental companionship, instruction and guidance; (iv) determine whether Mr. Hess had relied to his detriment on any statement by PM USA omitting material information, which caused or contributed to his injury and death; (v) choose the time period during which he relied on such; (vi) determine whether punitive damages were warranted against PM USA by clear and convincing evidence; and (vii) if punitive damages were warranted, to assign a total amount. It did not ask the jury to return findings on any other element of Mrs. Hess’s claims.
The jury returned a verdict of $3 million in compensatory damages, presumably on all three claims. It determined Mr. Hess was 58% responsible and PM USA was 42% responsible. It also found Mr. Hess had relied on PM USA’s statements only before May 5, 1982, and found punitive damages were warranted on the fraud by concealment claim in the amount of $5 million. Before entering its final judgment, the trial court sua sponte reduced the compensatory damage award to $1.26 million based on the comparative fault assigned to Mr. Hess.
PM USA moved for judgment as a matter of law on the fraudulent concealment claim, upon which the punitive damages award was based. It argued that in light of the jury’s finding that PM USA did not defraud Mr. Hess within the twelve years prior to the filing of the Engle complaint, the fraudulent concealment claim and the punitive damages award were barred by the statute of repose. Without explanation, the trial court denied the motion. It also denied PM USA’s motion to remit the punitive damages award. This appeal and cross-appeal follows.
We first address PM USA’s issue with the trial court’s application of the Engle findings. We reject PM USA’s various arguments regarding the application of the findings. This Court recently addressed the scope of application of the Engle findings in the Engle progeny cases. See Brown, 70 So.3d at 717-18. In Brown, we stated that “the Engle findings preclu-sively establish the conduct elements” of claims brought in a post-Engle action. Id. at 715. Therefore, despite PM USA’s urging, plaintiffs are not required to relitigate these elements. See id. at 717, 718. However, we further recognized that establishing membership in the Engle class does not satisfy a plaintiff’s burden of proving legal causation on individual claims. Id. at 715. With respect to the strict liability and negligence claims, we concluded in Brown that the trial court properly instructed the jury on legal causation and submitted the relevant questions to the jury. Id. As such, we affirmed the final judgment because there was no error in the trial court’s application of the Engle findings. Id. at 718.
To find that Mr. Hess was a member of the Engle class, the jury was required to find that his addiction to cigarettes containing nicotine was a legal cause of his death. However, unlike Brown, the jury was not instructed on legal causation as it pertained to the claims of strict liability and negligence. Moreover, the second phase verdict form did not require the jury to make a legal causation finding on the *259 strict liability or negligence claims. This aspect of legal cause is directed at the loss, injury, or damage claimed by the plaintiff.
Despite these failings, we affirm the final judgment on the strict liability and negligence claims due to certain stipulations made by PM USA. In the first phase of trial, pursuant to the parties’ stipulations, the trial court instructed the jury that “Stuart Hess’ lung cancer was caused by smoking Philip Morris USA cigarettes that contained nicotine” and “Stuart Hess died of lung cancer.” In addition, the jury was later instructed that PM USA’s cigarettes were “defective and unreasonably dangerous” and PM USA was “negligent in failing to exercise the degree of care that a reasonable manufacturer would exercise under like circumstance.” The particular stipulations found here coupled with the accepted Engle findings concerning PM USA’s conduct obviated the need to provide strict liability and negligence causation instructions in the second phase and submit those questions to the jury, as would otherwise be required pursuant to Brown,[6] See Brown, 70 So.3d at 717, 718. Under these specific circumstances, the causation instructions necessary for consideration of the causes of action and subsequent jury findings on that element were not required. Cf. Philip Morris USA v. Douglas, 83 So.3d 1002 (Fla. 2d DCA 2012) (affirming the final judgment on a strict liability claim based on the Phase I finding that cigarettes were “defective and unreasonably dangerous” and the jury’s determination that Mrs. Douglas’ diseases were legally caused by her smoking cigarettes manufactured by Tobacco).
Turning to the fraudulent concealment claim, the First District in R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010), explained that in order to prevail on such a claim:
[Pjlaintiffs ha[ve] to prove [1] the tobacco companies concealed or failed to disclose a material fact; [2] the companies knew or should have known the material fact should be disclosed; [3] the companies knew their concealment of or failure to disclose the material fact would induce the plaintiffs to act; [4] the tobacco companies had a duty to disclose the material fact; and [5] the plaintiffs detrimentally relied on the misinformation.
Id. at 1068 (citations omitted). In response to Question 4(a), the Engle jury determined that Tobacco “concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both.” See Engle, 945 So.2d at 1277. We hold this Engle finding established the conduct elements of a fraudulent concealment cause of action, i.e. that PM USA knowingly concealed material information with the purpose of inducing reliance. Engle did not relieve plaintiffs of the burden of proof with respect to the element of reliance in a fraud based claim. See Engle, 945 So.2d at 1263. Therefore, in accordance with Engle and our recent opinion in Brown, trial courts must instruct the jury on the remaining elements of a fraudulent concealment claim — reliance and damages — and allow the jury to make those determinations based upon the evidence presented. The trial court in this instance did instruct the jury regarding reliance with respect to the fraudulent con *260 cealment claim, and the jury was required to make a finding as to reliance and damages. Accordingly, we find no error in the application of the Engle findings with respect to the fraudulent concealment claim.
However, we must address whether in light of the jury’s finding that Mr. Hess relied on PM USA’s statements only before May 5, 1982, the fraudulent concealment claim was barred by the statute of repose. This Court reviews a trial court’s application of a statute of repose de novo because it involves an issue of law. Inmon v. Air Tractor, Inc., 74 So.3d 534, 537 (Fla. 4th DCA 2011) (citation omitted).
PM USA contends that the statute of repose bars the fraudulent concealment claim because each element of the claim, including reliance, must have occurred after May 5, 1982, twelve years before the filing of the Engle complaint. Mrs. Hess responds that the statute of repose sets forth the relevant time period for the statute’s application, focusing on the defendant’s conduct in committing the alleged fraud. Therefore, Mrs. Hess contends that reliance is irrelevant.
Florida’s statute of repose under section 95.031(2), Florida Statutes (1993) provides, “[Ajctions for ... fraud ... under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.” § 95.031(2), Fla. Stat. (1993). “[A] statute of repose is a substantive statute which not only bars enforcement of an accrued cause of action but may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute.” WRH Mortg., Inc. v. Butler, 684 So.2d 325, 327 (Fla. 5th DCA 1996). The Fifth District in Butler further stated that “[t]he period of time established by a statute of repose commences on the date of an event specified in the statute. At the end of that time period, the cause of action ceases to exist.” Id. (citations omitted); see also Carr v. Broward County, 505 So.2d 568, 570 (Fla. 4th DCA 1987) (also discussing how a statute of repose will “prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute”), approved, 541 So.2d 92 (Fla.1989).
“On its face, section 95.031(2) clearly bars [a] fraud claim to the extent that it is based on fraudulent conduct committed more than twelve years before the institution of this action.” Shepard v. Philip Morris, Inc., 1998 WL 34064515, at *4 (M.D.Fla. Apr.28, 1998). As noted earlier, “a claim of fraudulent misrepresentation and/or concealment requires proof of detrimental reliance on a material misrepresentation.” Soler v. Secondary Holdings, Inc., 771 So.2d 62, 69 (Fla. 3d DCA 2000) (citing Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985)). The Engle class action was commenced on May 5, 1994. Engle v. RJ Reynolds Tobacco, No. 94-08273, 2000 WL 33534572, at * 5 (Fla.Cir.Ct. Nov. 6, 2000). Thus, any fraud committed before May 5, 1982 is barred by the statute of repose. See Puchner v. Bache Halsey Stuart, Inc., 553 So.2d 216, 218 (Fla. 3d DCA 1989) (“Because Pulchner filed suit in August of 1982, any fraud committed before August of 1971 is barred by the statute of repose.”).
On the verdict form in this progeny suit, the jury was asked whether Mr. Hess relied to his detriment on any statement made by PM USA that omitted a material fact before May 5, 1982, after May 5,1982, or both before and after May 5,1982. The jury returned a verdict that Mr. Hess relied to his detriment on an omission by PM USA only before May 5, 1982. Because reliance is an element of every fraud claim, *261 and PM USA did not defraud Mr. Hess within the twelve-year period established by the statute of repose, we hold that the fraudulent concealment claim and the concealment-based punitive damages award are foreclosed by the statute of repose. Cf. Joy v. Brown & Williamson Tobacco Corp., 1998 WL 35229355, at *5 (M.D.Fla. May 8, 1998) (noting, in a summary judgment context, that plaintiffs pursuing a fraud claim must “adduce[ ] ... proof of reliance upon a misrepresentation that was committed within the 12-year [statute of repose] period prior to the filing of the complaint”).
In so holding, we reject Mrs. Hess’s contention that the date of reliance is irrelevant. While Mrs. Hess is correct that PM USA’s conduct with respect to fraudulent concealment was preclusively established by Engle, this alone does not resolve the issue. See Engle, 945 So.2d at 1277. As discussed above, the triggering event set forth in the applicable statute of repose, “the date of the commission of the alleged fraud”, necessarily includes reliance by the plaintiff. See § 95.031(2)(a), Fla. Stat. (1993). If it did not, a plaintiff would still be able to seek recovery from a defendant based on the defendant’s defrauding of third parties after the twelve-year repose period applicable to the plaintiff. Such a reading is contrary to the intent of a statute of repose. See Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 208 (Fla.2003) (“The very purpose of a statute of repose is to extinguish valid causes of action, sometimes before they even accrue.”) (citation omitted). Moreover, Mrs. Hess’s reliance on Laschke v. Brown & Williamson Tobacco Corp., 766 So.2d 1076 (Fla. 2d DCA 2000) is misplaced because Laschke explained that the date of the last act done is the critical date in cases of conspiracy, not fraud by concealment, which is at issue here. Id. at 1079 (“In claims alleging conspiracy, the critical date for statute of repose purposes should be the date of the last act done in furtherance of the conspiracy.”).
Based upon the foregoing, we reverse the judgment and punitive damages award on the fraudulent concealment claim and remand for entry of judgment for PM USA on that claim. In all other respects we affirm the final judgment.

Affirmed in part and Reversed in part.

POLEN and GROSS, JJ., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. We also note that, based upon our review of the record, any error in the reduction of the compensatory damages award was invited by Mrs. Hess. See Franqui v. State, 59 So.3d 82, 100 (Fla.2011) ("‘[A] party may not invite error and then be heard to complain of that error on appeal.' ") (citation omitted).

. The conspiracy to commit fraud claim was never submitted to the jury.

. The Final Judgment and Amended Omnibus Order entered in the Engle class action reflects that Benson & Hedges, the brand Mr. Hess primarily smoked, was named in the Phase I jury findings. Engle v. R.J. Reynolds Tobacco, No. 94-08273, 2000 WL 33534572, at * 1 (Fla.Cir.Ct. Nov. 6, 2000).

. These findings were as follows: (3) (strict liability) that Tobacco placed cigarettes on the market that were defective and unreasonably dangerous; (4)(a) (fraud by concealment) that Tobacco concealed or omitted material information not otherwise known or available knowing the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both; and (8) (negligence) that Tobacco was negligent. See Engle, 945 So.2d at 1276-77.

. We note that while there were also stipulations in Brown, those stipulations did not satisfy the causation elements in the strict liability and negligence causes of action as they did here. See Brown, 70 So.3d at 712.