TAYLOR, J.
In this Engle[1] progeny case, Philip Morris USA, Inc., appeals a final judgment entered on a jury verdict for Ellen Tate[2] on her claims for strict liability, negligence, and conspiracy to commit fraudulent concealment. The jury awarded plaintiff $8,000,000 in compensatory damages and $16,215,000 in punitive damages. Philip Morris argues that the trial court erred in: (1) using the Engle Phase I findings to conclusively establish the conduct elements of plaintiffs claims; (2) foreclosing Philip Morris’s statute of repose defense to plaintiffs claim for conspiracy to commit fraudulent concealment; (3) denying Philip Morris’s motion for judgment on plaintiffs claim for conspiracy to commit fraudulent concealment in light of the jury’s verdict in Philip Morris’s favor on the fraudulent concealment claim; and (4) denying Philip Morris’s motion for new trial or remittitur of the jury’s awards of compensatory and punitive damages.[3]
Based on our prior decision addressing appellant’s first point of error, we affirm the trial court’s order granting plaintiff partial summary judgment as a result of the Engle Phase I findings. R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707, 717-18 (Fla. 4th DCA 2011). For the reasons stated below, we affirm the denial of Philip Morris’s motion for judgment on plaintiffs claim for conspiracy to commit fraudulent concealment. We also affirm the jury’s award for compensatory damages but reverse the punitive damages award because the trial court erred in barring Philip Morris from asserting the statute of repose as an affirmative defense to plaintiffs fraud-based conspiracy claim. As we did in Philip Morris USA, Inc. v. Cohen, 102 So.3d 11 (Fla. 4th DCA 2012), we approve the amount of punitive damages awarded by the jury; the only issue on remand will be appellee’s entitlement to the award, which will be resolved when the jury determines whether appellee reasonably relied on statements or omissions made by appellant’s co-conspirators within the applicable statute of repose..
The plaintiff below, a longtime smoker diagnosed with chronic obstructive pulmonary disease (“COPD”), brought suit against Philip Morris. Her case was one of several post-Engle cases assigned to the Complex Civil Division of the Seventeenth Judicial Circuit. In her complaint, plaintiff alleged claims for strict liability, negligence, fraudulent concealment, and conspiracy to commit fraudulent concealment. Along with other post-Engle plaintiffs, she filed a motion for partial summary judgment as to several affirmative defenses raised by Philip Morris, including the statute of repose. She argued that these affirmative defenses were precluded by Engle. The trial court agreed and ruled Philip *1148 Morris would not be allowed to assert the statute of repose as an affirmative defense at trial.
At trial, the plaintiff testified that she started smoking when she was thirteen years old. She was born and raised in Brooklyn, New York, where smoking was prevalent. She could not say why she started smoking; she felt it was glamorous and everyone was doing it. By the time she was seventeen, the plaintiff was smoking over a pack and a half a day, and this number later increased to two packs a day.
The plaintiff testified that it was not unusual for someone her age to start smoking. In 1959, the year when she started smoking, there were no warnings on cigarette packs, so she had no reason to believe that cigarettes were dangerous. When she became pregnant with her first child, doctors did not even caution her to stop smoking for the sake of her baby’s health. She was aware of the Surgeon General’s report issued in 1964 that advised the public that smoking could be dangerous, but she did not pay much attention to it. Nor did she pay much attention to the warning labels that began appearing on her packs of cigarettes in the late sixties and seventies. The tobacco companies kept putting out information that smoking was safe, and she kept believing them. She could not remember a specific advertisement or billboard she relied on for reassurance, but she recalled seeing many over the years. At some point in the late eighties, however, she did switch from Marlboros to Merits because Philip Morris had advertised that Merits had less tar and nicotine. She testified that she did not know that Philip Morris, as well as other tobacco corporations, were aware that smoking could cause cancer or disease. She further testified that, had she known, she would have attempted to quit.
The plaintiff was diagnosed with COPD, a condition which progressively deteriorates the lungs. Her diagnosis provided her with the necessary motivation to quit smoking. She testified that her disease forced her to carry an oxygen tank with her when she was away from home; when she was home, she had to be directly connected to an oxygen concentrator via a fifty-foot tube.
The plaintiffs personal physician testified that the plaintiffs COPD was “very severe” and that her condition steadily deteriorated since her diagnosis. By the time of trial, the disease had completely perforated her lungs, and he believed it was miraculous that she had not already succumbed to the disease — her lung capacity was only at twenty-two percent.
The plaintiff also presented testimony from Dr. Robert Proctor, a historian and expert on the history of the tobacco industry. Dr. Proctor testified about the mission of the Tobacco Institute, a corporation formed by Philip Morris (as well as several other tobacco corporations) “to promote public understanding of the [tobacco] industry.” In Dr. Proctor’s opinion, the Tobacco Institute’s true purpose was to create a doubt that there was a causal link between cigarettes and disease. In addition to this expert testimony, the plaintiff presented internal memoranda from the Tobacco Institute showing that the Institute was aware that cigarettes were virulent and that its statements could provide the basis for a charge that tobacco corporations were “making false or misleading statements to promote the sale of cigarettes.”
During closing argument, plaintiffs counsel argued that Philip Morris was “the most notorious liar in the history of American civilization,” and he compared Philip Morris’s behavior to conduct involved in scandals such as Watergate and Enron. *1149 Philip Morris did not object to these accusations during trial.
The jury found that the plaintiffs addiction to cigarettes was a legal cause of her COPD; that Philip Morris’s negligence was a legal cause of her loss, injury, or damages; that defective and unreasonably dangerous cigarettes placed on the market by Philip Morris were a legal cause of her loss, injury, or damage; and that, while the plaintiff did not rely upon fraudulent statements made by Philip Morris, she did rely upon acts done in furtherance of Philip Morris’s agreement to conceal or omit material information. The jury found for Philip Morris on plaintiffs fraudulent concealment claim. The jury awarded the plaintiff $8,000,000 in compensatory damages and $16,215,000 in punitive damages as a result of Philip Morris’s agreement to conceal or omit material information. Her damages were subsequently reduced in accordance with the jury’s finding that she was thirty-six percent at fault for her injuries.
Philip Morris filed a post-trial motion for directed verdict, arguing that the jury’s finding that the plaintiff had not relied upon fraudulent statements made by Philip Morris entitled it to judgment as a matter of law on the conspiracy claim. Philip Morris also filed a motion for new trial, arguing that the court’s pre-trial ruling on affirmative defenses had precluded it from mounting a complete defense at trial. In addition, Philip Morris argued that the damages were excessive and the result of inflammatory comments made by plaintiffs counsel during closing argument. Philip Morris sought remittitur as an alternative to a new trial. The trial court denied these motions.

Motion for Judgment on Plaintiff’s Claim for Conspiracy to Commit Fraudulent Concealment

Philip Morris argues that the trial court erred in denying its post-trial motion for directed verdict on the plaintiffs claim for conspiracy to commit fraudulent concealment because the plaintiff presented insufficient evidence to support that claim. Philip Morris argues that, in light of the jury’s verdict in favor of Philip Morris on fraudulent concealment, the plaintiff was required to establish that the fraudulent misrepresentation on which she relied was made by one of Philip Morris’s co-conspirators and there was no evidence that the plaintiff relied upon any statements made by the co-conspirators.
An appellate court reviewing a ruling on a motion for directed verdict must view the evidence and all inferences of fact in a light most favorable to the nonmoving party. Gyongyosi v. Miller, 80 So.3d 1070, 1074 (Fla. 4th DCA 2012). A directed verdict should only be granted “where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.” Id.
There was sufficient evidence, when viewed in the light most favorable to the plaintiff, to sustain a verdict in her favor on the conspiracy to commit fraudulent concealment claim. Despite the plaintiffs inability to recall a specific article, newspaper article, TV report, or statement made by an Engle defendant (other than Philip Morris) that concealed the health risks of smoking, her testimony that she relied upon pervasive advertising in billboards and magazines by tobacco companies that low-tar and low-nicotine cigarettes might not be harmful was sufficient to support the trial court’s denial of Philip Morris’s post-trial motion for directed verdict.

Motion for Remittitur of Compensatory Damages Award

We find no error in the trial court’s denial of Philip Morris’s motion for remit-titur of the compensatory damages award. *1150 Citing Lassitter v. International Union of Operating Engineers, 349 So.2d 622, 627 (Fla.1976), Philip Morris argues that the $8 million award for non-economic damages is so large “as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake.” Philip Morris complains on appeal about certain remarks that were made by plaintiffs counsel during closing arguments. According to Philip Morris, these remarks inflamed the jury and resulted in plaintiffs excessive damages. The complained-of remarks include plaintiffs counsel’s assertion that Philip Morris was the “most notorious liar in the history of American civilization” and statements comparing Philip Morris’s conduct to scandals such as Watergate and Enron.
“Remittitur cannot be granted unless the amount of damages is so excessive that it shocks the judicial conscience and indicates that the jury has been influenced by passion or prejudice.” City of Hollywood v. Hogan, 986 So.2d 634, 647 (Fla. 4th DCA 2008) (quoting Weinstein Design Grp., Inc. v. Fielder, 884 So.2d 990, 1002 (Fla. 4th DCA 2004)). We find that the trial court did not abuse its discretion in determining that the jury was not influenced by passion or prejudice caused by these unobjected-to comments. Moreover, the compensatory damages awarded in this case are within the range of non-economic damages upheld in comparable cases. See Philip Morris USA, Inc. v. Naugle, — So.3d -,-(Fla. 4th DCA 2012); Campbell v. R.J. Reynolds Tobacco Co., No. 2008 CA 2147 (Fla. 1st Cir.Ct. Sept. 13, 2009), aff'd sub nom., Liggett Grp. LLC v. Campbell, 60 So.3d 1078 (Fla. 1st DCA 2011); R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307, 311-12 (Fla. 1st DCA 2012); Lukacs v. R.J. Reynolds Tobacco Co., Case No. 01-03822 CA 23 (Fla. 17th Cir.Ct. Nov. 14, 2008), aff'd 34 So.3d 56 (Fla. 3d DCA 2010). We thus affirm the compensatory damages award.

Motion for New Trial Based on Striking of Statute of Repose Defense on Claim for Conspiracy to Commit Fraudulent Concealment

Philip Morris argues that the trial court erred in striking its statute of repose defense based on the generalized Engle Phase I findings. It contends that the statute of repose is an individualized defense that can only be adjudicated based on the particular circumstances of each plaintiffs case. We agree.
In Engle, the Florida Supreme Court held that the conduct elements of fraudulent concealment and conspiracy to commit fraudulent concealment were established and would be given res judicata effect in future proceedings. 945 So.2d at 1276-77. Engle established that the tobacco corporations, including Philip Morris, “concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both.” Id. at 1277. Engle also established that the tobacco corporations “agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment.” Id. Thus, in a post -Engle case, a plaintiff alleging fraudulent concealment need only prove that he or she detrimentally relied upon the defendant tobacco corporation’s misinformation. See Philip Morris USA, Inc. v. Hess, 95 So.3d 254, 260-61 (Fla. 4th DCA 2012) (holding that Engle established the “conduct elements” of a fraudulent concealment cause of action). Similarly, a plaintiff claiming conspiracy to *1151 commit fraudulent concealment in an En-gle progeny case need only prove that he or she detrimentally relied upon deceptive statements made by a member of the conspiracy.
Under Florida’s statute of repose — section 95.031, Florida Statutes (2007) — a party’s cause of action “founded upon fraud” must be filed within twelve years after the date of the commission of the alleged fraud. Id. at § (2)(a). Because fraud cannot be committed absent detrimental reliance by the plaintiff, see Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985), whether a fraudulent act was committed within twelve years of the filing of an action can only be determined based on the timing of a particular plaintiffs alleged reliance.
Significantly, the jury in the Engle case (through a specific verdict form) was asked whether each of the three named plaintiffs had proven their claims for conspiracy to commit fraudulent concealment within the twelve-year period preceding the filing of the Engle complaint. The jury was required to make a factual determination as to whether each named plaintiffs injuries were “legally caused by acts done before or after May 5, 1982 in furtherance of an agreement among two or more of the defendants to commit an act of omission or concealment.” Engle v. RJ Reynolds Tobacco Co., No. 94-08273 CA 22 (Fla. 11th Cir.Ct. Apr. 7, 2000). The jury found that each named plaintiffs injuries were legally caused by acts done in furtherance of an agreement both before and after May 5, 1982. Id. In deciding that issue, the jury had to determine whether or not an individual plaintiff relied upon acts done in furtherance of a conspiracy to conceal. Thus, as the Engle case demonstrated, the issue of reliance upon deceptive statements made by a conspirator within the statute of repose window is an individualized jury issue.
Although the record in this case contains evidence which arguably could support a jury’s finding that the plaintiff relied upon a co-conspirator’s deceptive statement or omission after May 5, 1982, the trial court’s entry of partial summary judgment on the statute of repose defense deprived Philip Morris of its right to defend on that issue and have the jury make that determination. See Naugle, — So.3d at - (holding that it was for the jury to determine whether the plaintiff would have continued to smoke cigarettes if not for Philip Morris’s nondisclosures and whether the plaintiff justifiably relied on the false controversy created by the tobacco industry after May 5, 1982); but cf. Martin, 53 So.3d 1060, 1069 (Fla. 1st DCA 2010) (suggesting that reliance can be inferred from “pervasive misleading advertising” disseminated to the general public); Frazier v. Philip Morris USA Inc., 89 So.3d 937, 947-48 (Fla. 3d DCA 2012) (rejecting Philip Morris’s contention that the plaintiff “was obligated to show further or continued reliance upon the alleged last act in furtherance of the conspiracy”).
The trial court thus erred in striking Philip Morris’s statute of repose defense to the conspiracy claim. Because the jury awarded punitive damages on the conspiracy claim, we reverse the punitive damages award. However, for the reasons stated below, we do not find the amount of the punitive damages award excessive; we will thus allow the award to stand if on retrial the plaintiff prevails on the statute of repose issue. See Philip Morris USA Inc. v. Cohen, 102 So.3d 11, 16 (Fla. 4th DCA 2012); see also Elmore v. Fla. Power & Light Co., 895 So.2d 475, 479 (Fla. 4th DCA 2005) (holding that trial court erred by granting a directed verdict on statute of limitations defense and remanding for a new trial on the statute of limitations only).
*1152 As we explained in Cohen, “[ljimiting the new trial to the issue of [plaintiffs] entitlement to the punitive damage awards will not be confusing or prejudicial.” 102 So.3d at 15; see also Purvis v. Inter-County Tel. & Tel. Co., 173 So.2d 679, 681 (Fla.1965) (“The trial court can by proper instructions to the jury and supervision of the trial process avoid any inferences or implications to be drawn from the previous award of damages ... avoiding prejudice to [defendant].... ”); Griefer v. DiPietro, 625 So.2d 1226, 1229 (Fla. 4th DCA 1993) (holding that reversal for a new trial on liability is appropriate only “where the error complained of affects only the issues of liability”).

Motion for Remittitur of Punitive Damages Award for Violation of State and Federal Law

“Florida law requires that an appellate court review a punitive damages award to make certain that the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct.” Engle, 945 So.2d at 1263 (citing Arab Termite & Pest Control of Fla., Inc. v. Jenkins, 409 So.2d 1039, 1043 (Fla.1982)). Additionally, an appellate court must determine whether there is a “reasonable relationship” between the amount of compensatory and punitive damages awarded by a jury. Id. at 1264. In determining whether or not an award of punitive damages is excessive, our court must consider three factors:
(1) the degree of reprehensibility of the defendant’s misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.
Id. (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513,155 L.Ed.2d 585 (2003)).
We find that the punitive damages awarded in this case, $16 million, were not excessive. First, the evidence established that Philip Morris and its conspirators were aware of the crippling illnesses that their products could cause but chose to manufacture a controversy to protect their bottom line. The reprehensibility of the tobacco companies’ misconduct cannot be understated, so the award was not proportionally unreasonable when viewed in light of the “malice, outrage, or wantonness of the tortious conduct.” Id. at 1263.
Second, the two-to-one ratio between the compensatory and punitive damages falls well within the limits of reasonableness, as an award of punitive damages is not presumed to be excessive unless the amount of punitive damages exceeds “[t]hree times the amount of compensatory damages awarded to each person entitled thereto” by the trier of fact. § 768.73(l)(a)l., Fla. Stat. (2005). An award of punitive damages must be tailored to the “facts and circumstances of the defendant’s conduct and the harm to the plaintiff.” Engle, 945 So.2d at 1265 (quoting Campbell, 538 U.S. at 424-26,123 S.Ct. 1513). Again, based upon the evidence presented at trial, it cannot be said that the two-to-one ratio was clearly excessive. See Martin, 53 So.3d at 1071 (upholding punitive damages award despite ratio of nearly eight-to-one between compensatory and punitive damages). Additionally, the evidence presented at trial also showed that Philip Morris will not be crippled by the punitive damages award and will have the ability to pay the award. See Engle, 945 So.2d at 1265 n. 8.
*1153 Third, the punitive damages awarded in this case are in line with the punitive damages awarded in comparable Engle progeny cases. E.g., Cohen, 102 So.3d at 17 ($10 million); Townsend, 90 So.3d at 311-12 (Fla. 1st DCA 2012) ($40.8 million). Accordingly, we approve the amount of punitive damages awarded by the jury; therefore, the only issue to be decided on remand is plaintiffs Estate’s entitlement to the award, which will be resolved when the jury determines whether plaintiff reasonably relied on statements or omissions made by appellant’s co-conspirators within the applicable statute of repose period.

Conclusion

In sum, we affirm the judgment and damages awarded on appellee’s strict liability and negligence claims, but reverse the entry of judgment on her claim for conspiracy to commit fraudulent concealment, because the trial court erroneously struck Philip Morris’s statute of repose affirmative defense to this claim. Should the jury find in favor of the Estate on the statute of repose issue, then the punitive damages award shall be reinstated.

Affirmed in part; Reversed in part; and Remanded for further proceedings consistent with this opinion.

MAY, C.J., and CIKLIN, J., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. Ellen Tate passed away during the pen-dency of this appeal, and her daughter, as personal representative of her mother’s estate, is substituting as appellee.

.The Estate filed a notice of cross-appeal, but failed to raise any issues on cross-appeal in its brief. The cross-appeal is deemed abandoned. Vetrick v. Hollander, 743 So.2d 1128, 1129 n. 2 (Fla. 4th DCA 1999).