STEVENSON, J.
In this Engle[1] progeny case, R.J. Reynolds Tobacco Company (RJR) appeals a jury verdict in favor of plaintiff, as personal representative of the estate of her late husband, on personal injury and wrongful death claims based on strict liability, negligence, fraudulent concealment, and conspiracy to commit fraud by concealment. The jury apportioned 77.5% of the fault to RJR and 22.5% to the smoker, awarding $5,235,000 in compensatory damages and $25 million in punitive damages. Faced with RJR’s motion for remittitur, the trial court reduced the compensatory damages to account for the percentage of fault the jury assigned to the smoker and reduced the punitive damages to $15,705,000, three times the compensatory damages awarded by the jury. RJR has appealed and plaintiff has cross-appealed. While the parties raise a number of issues, we find merit in only two — RJR’s claim that the trial court erred in striking its statute of repose defense and plaintiffs claim that the trial court erroneously believed it was required to reduce the punitive damages award. We affirm the other issues raised and write solely to address the aforementioned matters.

Factual Background

Matthew Buonomo began smoking at age thirteen. In 1995, after fifty-plus years of smoking three packs a day, Buo-nomo began suffering from chronic obstructive pulmonary disease (COPD). Pri- or to his death in 2008, Buonomo filed suit against RJR. Connie Buonomo, Matthew’s widow and the personal representative of his estate, was substituted as the plaintiff and the case was tried in 2010. Plaintiff asserted claims for strict liability, negligence, fraudulent concealment, and conspiracy to commit fraud by concealment.
As an Engle progeny case, the trial proceeded in two phases. In phase I, the jury was asked to determine whether Buonomo was a member of the Engle class, i.e., whether he was addicted to cigarettes, whether his addiction to cigarettes was a legal cause of his COPD, and whether he had COPD prior to November 21, 1996. After resolving these issues in plaintiffs favor, the trial proceeded to phase II, which required the jury to determine whether Buonomo’s COPD was a legal cause of his death and whether RJR’s negligence and intentional misconduct were a legal cause of Buonomo’s death.
During phase II, the jury heard extensive testimony concerning the tobacco industry’s efforts to conceal the harmful effects of smoking. The jury was instructed to accept the following factual findings established as the result of the Engle case: (1) nicotine is addictive; (2) smoking causes COPD; (3) RJR was negligent; (4) RJR placed cigarettes on the market that were defective and unreasonably dangerous; and (5) RJR concealed and/or omitted material information or failed to disclose material facts concerning the health effects or addictive nature of cigarettes and entered into an agreement to conceal or omit the health effects or their addictive nature with the intent that smokers and the public rely on such information to their detriment. The jury also listened to Buo-nomo’s widow, daughters, and granddaughters testify about the debilitating effects of the COPD and the toll Buonomo’s illness took on the family, particularly his wife of nearly sixty years and, in the end, his caregiver.
Having heard the evidence, the jury returned a verdict in favor of the plaintiff, *105 finding that RJR was guilty of negligence, gross negligence, and intentional misconduct; that RJR’s negligence and intentional misconduct were the legal cause of Buonomo’s COPD and death; and that Buonomo had reasonably relied upon RJR’s concealment or omission of material information concerning the health effects and addictive nature of cigarettes. The jury apportioned 77.5% of the fault to RJR and 22.5% to Buonomo, awarding $405,000 for medical and funeral expenses, $4.83 million for plaintiffs past and future pain and suffering and her loss of companionship, and $25 million in punitive damages. As the result of RJR’s post-trial motions for remittitur, the trial court reduced the compensatory damages award by the 22.5% fault the jury attributed to Buonomo and reduced the punitive damages to $15,705,000 — three times the amount of compensatory damages awarded by the jury.

Statute of Repose

RJR sought to avoid liability for the fraudulent concealment and conspiracy to commit fraudulent concealment claims by asserting a statute of repose defense, 1.e., plaintiffs claims were barred as plaintiff could not demonstrate detrimental reliance upon any statements made by defendant on or after May 5, 1982, twelve years prior to the filing of suit by plaintiffs in the Engle case. See § 95.031(2)(a), Fla. Stat. (stating that “in any event an action for fraud ... must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered”). Prior to trial, the trial court struck the defense. RJR insists the striking of the defense was error, maintaining that the statute of repose is an individualized defense that was not foreclosed by Engle and that must be decided on a case-by-case basis — an argument with which we have consistently agreed. See Philip Morris USA Inc. v. Putney, 117 So.3d 798, 803-04 (Fla. 4th DCA 2013); -Philip Morris USA, Inc. v. Kayton, 104 So.3d 1145, 1150-51 (Fla. 4th DCA 2012); Philip Morris USA, Inc. v. Naugle, 103 So.3d 944, 947 (Fla. 4th DCA 2012); Philip Morris USA, Inc. v. Hess, 95 So.3d 254, 260-61 (Fla. 4th DCA 2012), review denied, 117 So.3d' 412 (Fla. 2013).[2]
As we have previously held, while the conduct elements of the claims for fraudulent concealment and conspiracy to commit fraudulent concealment were established by virtue of the Engle decision, an Engle progeny plaintiff still must prove detrimental reliance upon the defendant tobacco company’s misinformation. See Kayton, 104 So.3d at 1150-51; Hess, 95 So.3d at 260-61. And, “[bjecause fraud cannot be committed absent detrimental reliance by the plaintiff, see Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985), whether a fraudulent act was committed within twelve years of the filing of an action can only be determined based on the timing of a particular plaintiffs alleged reliance.” Kayton, 104 So.3d at 1151; see also Hess, 95 So.3d at 261 (rejecting plaintiffs claim that date of reliance was irrelevant as “the triggering event set forth in the applicable statute of repose, ‘the date of the commission of the alleged fraud,’ necessarily includes reliance by the plaintiff’) (quoting section 95.031(2)(a), Fla. *106 Stat. (1993)); but see Frazier v. Philip Morris USA Inc., 89 So.3d 937, 947-48 (Fla. 3d DCA 2012) (holding that, for conspiracy claim, it is the last act done in furtherance of the conspiracy that fixes the date for commencement of the statute of repose and plaintiff need not show continued reliance upon that last act). While the record contains evidence that could support a finding .of reliance on or after May 5, 1982, the trial court’s ruling precluded a jury determination on the issue and deprived RJR of the defense. This was error.

Cross-Appeal: Punitive Damages

The jury awarded $25 million in punitive damages in connection with the fraud claims. In response to RJR’s motion for remittitur, the trial court reduced the punitive damages to $15,705,000. The trial court’s order states that, as the result of section 768.73(l)(a)l., Florida Statutes, the punitive damages “must be reduced to three times the compensatory damages awarded.” Plaintiff argues the trial court erred in finding the statute required the reduction of the punitive damages to three times the compensatory damages. We agree.
We begin by finding that neither the $25 million in punitive damages initially awarded by the jury nor the reduced amount of $15,705,000 is so excessive as to violate due process. See R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307, 313 (Fla. 1st DCA 2012) (affirming award to smoker’s widow of $10.8 million in compensatory damages, reduced to $5.5 million based on jury’s apportionment of fault, and $40.8 million in punitive damages; finding record was “replete with evidence of the decades-long, wanton and intentional conduct by RJR in vigorously, persuasively marketing to the public ... a product the company knew was addictive; willfully concealing the serious health hazards posed by cigarette smoking; affirmatively deceiving the public into believing that cigarettes may not be harmful; and refusing to remove certain ingredients in cigarettes (such as nicotine) that the company counted on to sustain sales”), review denied, 110 So.3d 441 (Fla.2013), review dismissed, 110 So.3d 442 (Fla.2013); R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1070-72 (Fla. 1st DCA 2010) (affirming award to smoker’s widow of $5 million in compensatory damages, reduced to $3.3 million based on jury’s apportionment of fault, and $25 million in punitive damages), review denied, 67 So.3d 1050 (Fla.2011), cert, denied, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 617 (2012). The trial court reduced the $25 million awarded by the jury to $15,705,000 believing that section 768.73 of the Florida Statutes required it to do so. This is not, however, the case.
In its order, the trial court cited section 768.73(l)(a)l. While the court did not include a year, section 768.73 did not have a subsection “(l)(a)l.” until after the 1999 amendments. See Ch. 99-225, § 23, at 1416-18, Laws of Fla. And, under the posL-1999 version of the statute (the statute has not been amended since 1999), a punitive damages award cannot exceed the greater of three times the compensatory damages award or $500,000 unless certain findings are made by the “fact finder.” See § 768.73(l)(a)-(c), Fla. Stat. (2012). It is, howevei", the 1995 version of the statute that governs the instant case — a fact the parties do not dispute. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994) (holding substantive amendment to section 768.73 could not be applied to cause of action that accrued prior to effective date of amendment); St. John v. Coisman, 799 So.2d 1110, 1113 (Fla. 5th DCA 2001) (holding that applicable version of section 768.73 was version in *107 effect at the time the cause of action accrued). And, under the 1995 version of the statute, the trial court is free to exceed the three-times-compensatory cap on punitive damages if “the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact.” § 768.73(l)(b), Fla. Stat. (1995) (emphasis added). For the foregoing reasons, we must remand the matter to the trial court to exercise the discretion afforded it by the governing 1995 version of section 768.73.[3]

Conclusion

In sum, having considered all arguments raised, we affirm the judgment and damages awarded on the plaintiffs strict liability and negligence claims. We reverse, however, the judgment entered in plaintiffs favor on the claims for fraudulent concealment and conspiracy to commit fraud by concealment due to the erroneous striking of RJR’s statute of repose defense. To remedy the erroneous striking of the defense, we remand the case for a jury determination on the statute of repose issue. In the event the jury should find in favor of the plaintiff on the statute of repose issue, the trial court is free to reinstate the punitive damages award made by the jury, subject to any reduction made by the trial court in the exercise of the discretion afforded it under section 768.73, Florida Statutes (1995).

Affirmed in part, Reversed in part, and Remanded.

DAMOORGIAN, C.J., and CONNER, J., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. In Hess, the Florida Supreme Court denied Philip Morris's petition for review by order dated June 3, 2013. That same day, however, in case number SC12-2153, the Florida Supreme Court granted Elaine Hess’s petition for review. Similarly, in Kayton, both parties have filed petitions seeking review from the Florida Supreme Court. On June 13, 2013, in case numbers SC13-171 and SC13-243, the Florida Supreme Court ordered the proceedings in Kayton stayed pending disposition of Hess.

. Plaintiff also asserts error in the reduction of the compensatory damages award to account for the smoker’s contributory fault. Any error in the reduction of the compensatory damages was invited and/or waived by plaintiff. Compare Philip Morris USA, Inc. v. Hess, 95 So.3d at 256 n. 2 (finding any error in reduction of compensatory damages by fault attributed to smoker was invited where the jury was told that the court would reduce the damages to account for the assignment of fault), with RJ. Reynolds Tobacco Co. v. Sury, 118 So.3d 849 (Fla. 1st DCA 2013) (refusing to find waiver/invited error where plaintiff sought apportionment on counts "other than those alleging intentional torts” and plaintiff "never argued to the jury or the court that the damages ... should be reduced by his [the smoker’s] portion of fault”). Accordingly, we do not reach the merits of plaintiff’s argument that reduction of the compensatory damages pursuant to section 768.81, Florida Statutes, was not appropriate as the gist of the suit is an intentional tort.