871 So.2d 906 (2004)
FORELINE SECURITY CORPORATION, Appellant,
v.
Marishia SCOTT, Appellee.
No. 5D02-1210.
District Court of Appeal of Florida, Fifth District.
February 27, 2004.
Rehearing Denied May 10, 2004.
*907 Sylvia H. Walbolt and Robert E. Biasotti of Carlton Fields, P.A., St. Petersburg, for Appellant.
Joel D. Eaton of Podhurst Orseck, P.A., Miami, and Crews & Bodiford, P.A., Orlando, for Appellee.
PETERSON, J.
Foreline Security Corporation ("Foreline") appeals a final judgment in favor of Marishia Scott ("Scott"). Foreline contends that the trial court: erred by refusing to instruct the jury under the Slavin doctrine derived from Slavin v. Kay, 108 So.2d 462 (Fla.1959); erred in refusing to enter a directed verdict in favor of Foreline for fraudulent and negligent misrepresentation; *908 and erred in holding Foreline liable for the full amount of damages. We agree.
Foreline installed a bank security system at the Mount Dora branch of the United Southern Bank ("USB") in 1993. The installation during the construction of the branch facility included system wiring, panic buttons that triggered a silent alarm, cash drawers equipped with wireless "bait money clips" that would also trigger a silent alarm and placement of a security camera, monitor and VCR. Foreline's original design required placement of the monitor and VCR in a location out of sight of the public, but both were placed in a manager's glassed-in office in full view of the public after a USB officer instructed Foreline to place the monitor in that office. After the installation, USB operated the system without mishap until the tragic events of March 20, 1999.
On that date, Fred Anderson, a parolee who had visited USB on previous days while posing as a college student doing research on a career in banking and who knew the head teller from church, entered the branch facility shortly after 10:00 a.m. Anderson brought with him orange juice and doughnuts for the two female tellers on duty, Scott and Heather Young. Inexplicably, USB had no other employees or security officer on duty that morning. Anderson visited with the tellers until the bank was empty of customers, left briefly to retrieve a gun from his car and returned. He then pointed the gun at Scott, fired a shot and said "[D]o not set off any alarms, go straight to the vault." Once in the vault, he asked the two tellers "who wants to die first?" Then Anderson shot and killed Heather Young and then shot Scott in the neck, rendering her a quadriplegic. Anderson was caught as he exited the bank and was later tried and convicted for the murder of Heather Young.
Scott sued Foreline adopting several theories of liability: 1) Foreline negligently installed the security video monitor and VCR at the bank in an area accessible to a potential bank robber, causing the robber to select that particular bank to rob; 2) Foreline failed to provide panic buttons at the bank's teller station and in the bank's vault; and 3) Foreline fraudulently and negligently represented to USB that the security system was a "UL listed burglary and holdup alarm system."[1] Foreline denied liability and asserted various affirmative defenses including the Slavin doctrine. At trial, Scott's security alarm expert opined that readily accessible panic alarm devices should have been installed at the teller stations, at the drawer containing the keys to the day gate, in the locking mechanism for the day gate and in the bank vault itself. In addition, the expert testified that Foreline had not installed a "UL listed hold-up and alarm system." In sum, the alarm expert testified that the system Foreline installed fell short of industry standards for such a system.
The jury returned a verdict in favor of Scott on all of her claims except the breach of contract claim. In addition to finding negligence on the part of Foreline, the jury found USB was also negligent and apportioned fifty percent fault to USB and fifty percent fault to Foreline. After the damages phase of the bifurcated trial, the jury awarded Scott $26,917,000 in total damages, including $11,917,000 in economic damages and $15,000,000 in non-economic damages. The trial court entered judgment against Foreline for the full amount of the verdict ($26,917,000) ruling that allocation *909 of damages for comparative negligence pursuant to section 768.81, Florida Statutes, did not apply.

I. THE SLAVIN DOCTRINE
Foreline contends that it was entitled to an instruction based on Slavin because it contracted with USB to provide and install a security and video surveillance system and USB accepted the system as installed, and operated it for six years before Anderson's robbery.
Florida follows the Slavin rule, also known as the "completed and accepted rule,"[2] although a majority of states have adopted the "modern rule."[3] In Slavin, the plaintiff sued a motel owner and a plumbing contractor for negligence when a wash basin installed by the contractor on a wall in the owner's motel room fell from the wall and injured the plaintiff. Slavin, 108 So.2d at 463. The trial court directed a verdict in favor of the hotel owner because the defect was not discoverable by ordinary inspection. The trial court also directed a verdict in favor of the contractor because of a lack of privity between the contractor and the plaintiff. The Florida Supreme Court affirmed both judgments but on rehearing, reversed the contractor's judgment, discarded the privity requirement and announced the doctrine now known as the Slavin doctrine: a contractor is not liable for injuries to third parties after the owner has accepted the work unless the defect at issue was latent and could not have been discovered by the owner or unless the contractor was dealing with inherently dangerous elements. Id. at 466-67.
The Slavin doctrine extinguishes the liability of a contractor for a defect by shifting the duty of care originally owed to others by the contractor to the accepting owner as long as any defects are patent.[4] Under Slavin, a patent defect prevents a claim of liability on the part of the contractor after acceptance by the owner.
In the instant case, Foreline presented evidence that it had completed the installation of USB's security system six years before the robbery, that USB had accepted the security system in 1993, and that USB and its head of security were required by federal law to "select, test, operate and properly maintain" their security system. Foreline also asserted that USB and its head of security were in a superior position to observe the system on a day-to-day basis and could discover any patent defects in the system, such as the danger alleged by Scott of placing the VCR and monitor in the public's view and the danger posed by any alleged lack of panic buttons in various locations in the branch even though some of those locations had been wired for panic devices with USB's knowledge.[5]
*910 A trial court commits reversible error when it refuses to give a requested jury instruction which accurately states the law, if: a) there is evidence supporting the instruction; and b) the instruction was necessary to allow the jury to properly resolve all issues in the case. E.g., Cornette v. Spalding & Evenflo Cos., 608 So.2d 144, 145 (Fla. 4th DCA 1992); Orange County v. Piper, 523 So.2d 196, 197 (Fla. 5th DCA 1988). Litigants have a "right to have the court instruct the jury on the law applicable to the evidence under the issues presented." Ruiz v. Cold Storage & Insulation Contractors, Inc., 306 So.2d 153, 154 (Fla. 2d DCA 1975). In the instant case, Foreline, having presented evidence that USB had accepted the security systems as designed and installed, and that any defects in the system were patent and were known or should have been known by USB, was entitled to a jury instruction based on Slavin. Scott argues that a jury instruction based on Slavin is not necessary as this is a "products liability" case and the security and video surveillance systems were products, not structural improvements to the real property. We find no merit in Scott's argument. See, e.g., Equibank v. U.S. I.R.S., 749 F.2d 1176, 1179 (5th Cir.1985) (holding that alarm systems from the societal viewpoint, are not movable; they are electrical installations which become a component part of the building or construction to which they are attached). See also Travelers Ins. Co. v. Guardian Alarm Co., 231 Mich.App. 473, 586 N.W.2d 760, 762-63 (1998) (holding that a fire alarm system constituted an improvement to real property); Qualitex, Inc. v. Coventry Realty Corp., 557 A.2d 850, 852 (R.I.1989), and Kallas Millwork Corp. v. Square D Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975) (each holding that fire protection sprinkler systems and high-pressure water pipes designed for fire protection are improvements to real property for the purpose of a statute of repose).

II. FRAUDULENT AND NEGLIGENT MISREPRESENTATION
Foreline also contends on appeal that the trial court erred in failing to grant its motion for a directed verdict on Scott's fraudulent and negligent misrepresentation claims that Foreline represented that its system was UL listed or approved.[6] In order for Scott to recover on her claim of fraudulent misrepresentation, Scott must prove, inter alia, reliance on a fraudulent misrepresentation. E.g., Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985). This same requirement pertains to Scott's negligent misrepresentation claim. E.g., Baggett v. Electricians Local 915 Credit Union, 620 So.2d 784, 786 (Fla. 2d DCA 1993). Reliance means that Scott must show that Foreline made a misrepresentation that she personally relied upon. See, e.g., Lance v. Wade, 457 So.2d 1008, 1010-11 (Fla.1984). There is no evidence in the record that Foreline communicated any misrepresentation of fact to Scott or that Scott relied on any misrepresentation of fact. In order to prevail, Scott must have known about and relied upon a misrepresentation of fact; she cannot rely on any statement made to USB about which she had no knowledge. Accordingly, the trial court erred when it failed to grant Foreline's motion for directed verdict on Scott's fraudulent and negligent misrepresentation *911 counts. Scott neither knew of any misrepresentations of fact, nor could she have relied on any such statements.

III. COMPARATIVE NEGLIGENCE
Finally, Foreline contends that the trial court erred when it determined post-verdict that Foreline was solely responsible for the full amount of Scott's damages. In its answer and affirmative defenses, Foreline raised several defenses including comparative fault. At trial, Foreline's theory of liability was that USB, not Foreline, was responsible for Scott's injuries, or at least a part of those injuries. After Foreline pursued a comparative negligence theory of liability throughout the trial, the jury was then instructed by the trial court that "[t]he court in entering judgment will take into account your allocation of fault." The jury then found USB 50% liable and Foreline 50% liable. The trial court then ignored the allocation of fault determined by the jury and ruled that Scott was entitled to judgment against Foreline for 100% of the award of damages.
We conclude that the trial court erred by not applying the comparative negligence statute when it misled the jury into believing that it was allocating fault fifty-fifty between Foreline and USB. The jury may have reached a different verdict on damages had it known that Foreline would bear the entire amount.

IV. CONCLUSION
We find that the trial court committed reversible error when it failed to instruct the jury on Foreline's Slavin rule defense. In addition, the trial court erred in refusing to enter a directed verdict in favor of Foreline for fraudulent and negligent misrepresentation because Scott did not show reliance. The trial court also erred in holding Foreline liable for the full amount of damages when it misled the jury into thinking that the jury's allocation of fault would be considered, and it was not.
We remand to the trial court for retrial.
REVERSED AND REMANDED.
SHARP, W. and TORPY, JJ., concur.
NOTES
[1] Scott alleged seven causes of action: strict liability; negligence; breach of implied warranty of fitness; breach of an implied warranty of merchantability; breach of contract; intentional misrepresentation; and negligent misrepresentation.
[2] "The `completed and accepted' rule applies so as to free the contractor from liability where the contractor did not owe a duty of care to a third person, the contractor did not breach a duty of care to a third person, and the contractor is not negligent or the contractor's negligence, if any, is a remote cause of the injury and the negligence of the owner or another person is the proximate cause of the injury." 74 A.L.R. 544-45 (1999).
[3] "The `modern rule' or the `forseeability doctrine' provides that a building or construction contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and acceptance by the owner where it was reasonably foreseeable that a third person would be injured by such work due to the contractor's negligence or failure to disclose a dangerous condition known to such contractor." 74 A.L.R. 5th, § 2[a] 543-44 (1999).
[4] Patent defects are defects which are apparent to a normally observant person, especially a buyer on a reasonable inspection. Black's Law Dictionary 429 (1999).
[5] Evidence was presented that USB elected to not install some panic buttons in order to reduce the cost of the system.
[6] The significance of the security system not being "UL listed" is not clear from the record. There is no indication that any security system is UL listed although some components of a system may be UL approved.