THOMAS, J.
Appellant R.J. Reynolds Tobacco Company (Reynolds) appeals a Final Judgment awarding damages to Appellee Carolyn Hiott, Personal Representative of the Estate of Kenneth Hiott (Hiott). Reynolds asserts three grounds of reversible error: 1) the trial court erred in admitting evidence that Reynolds successfully challenged new proposed tobacco warnings in federal court; 2) the trial court erred in denying Reynolds’ requested jury instruction on the statute of repose; and 3) Reynolds’ due-process rights were violated by the application of factual findings of its misconduct which resulted from prior liti *475 gation in Engle v. Liggett Group, Inc.[1]
Hiott cross-appeals the trial court’s order applying the jury finding that Mr. Hiott was partially at fault for his smoking-related illness to reduce the damages award. She asserts that because the jury found Reynolds committed the intentional tort of fraudulent concealment, section 768.81(4), Florida Statutes, barred application of Mr. Hiott’s comparative fault to reduce damages. The trial court found that Hiott waived this argument below by failing to raise it in the complaint or at trial.
We affirm on all issues. We certify conflict with Philip Morris USA, Inc. v. Hess, 95 So.3d 254 (Fla. 4th DCA 2012), rev. denied, 117 So.3d 412 (Fla.2013), on the question of whether the trial court erred in denying Reynolds’ requested jury instruction on the statute of repose.

TRIAL EVIDENCE AND RULINGS

Hiott sued Reynolds for the wrongful death of her husband, who died in 1996 of lung cancer, asserting claims of strict liability, negligence, fraudulent concealment, and civil conspiracy to fraudulently conceal. The jury found Mr. Hiott was a member of the Engle class due to his addiction to nicotine.
Pursuant to Engle, the jury was instructed that the following findings were binding in its deliberations:
1. Cigarette smoking causes lung cancer;
2. Cigarettes are addictive;
3. Reynolds put cigarettes on the market that were defective and unreasonably dangerous;
4. Reynolds concealed material information not otherwise known or failed to disclose that smoking was addictive and caused other related health issues;
5. Reynolds agreed with other companies to conceal or omit information regarding the health effects of cigarettes “or their addictive nature or both with the intention that smokers ... would rely on this information to their detriment”; and
6. Reynolds was negligent.
Thus, the remaining issues for resolution by the jury and the trial court were:
1. Whether Mr. Hiott was addicted to nicotine;
2. Whether the defective cigarettes manufactured by Reynolds were the cause of Mr. Hiott’s death;
3. Whether Reynolds’ negligence was the cause of Mr. Hiott’s death;
4. Whether Reynolds’ concealment of the dangers of smoking was a legal cause of Mr. Hiott’s death;
5. Whether the conspiracy to withhold information by Reynolds and others was a legal cause of Mr. Hiott’s death;
6. Whether Mr. Hiott was at fault, and if so, his portion of fault for his injuries and damages; and
7. Compensatory and punitive damages.
The trial was bifurcated in two phases, with Engle class membership, liability, comparative fault, compensatory damages, and entitlement to punitive damages to be determined in Phase I; and if punitive damages were found, the amount of punitive damages to be assessed against Reynolds in Phase II.
The evidence established that Mr. Hiott started smoking at approximately age 15, or about 1966. He smoked a pack of cigarettes every day for 28 years, until just before his death in 1996. Mr. Hiott con- *476 suraed approximately 200,000 cigarettes or 2 million doses of nicotine. He attempted to quit smoking several times, including attending a cessation clinic.
Hiott presented substantial evidence of Reynolds’ corporate misconduct and decades-long concealment of the health dangers of nicotine. Further, Hiott presented extensive testimony regarding how the company ensured that smokers would become addicted to smoking and would be misled regarding the dangers of nicotine. This evidence included testimony that lung cancer was a rare disease in the United States in the early 20th century before smoking became prevalent, but later became a disease killing approximately 400,-000 people annually, as modern marketing and manufacturing methods of cigarettes evolved.
In a pre-trial ruling, the trial court allowed Hiott to introduce evidence that in 2012 Reynolds successfully challenged graphic tobacco warnings proposed by the federal Food and Drug Administration in federal court. Hiott argued that Reynolds’ challenge to the proposed graphic warnings was part of a long pattern of misconduct in which the company attempted to thwart public health education. Thus, Hiott argued, contrary to Reynolds’ self-presentation of a “reformed” company which now cooperated with public health agencies, Reynolds continued to evade their obligation to make every effort to warn the public. Reynolds argued that the company prevailed in its First Amendment challenge to these proposed warnings and that the warnings were ineffective. Reynolds further argued that, because Mr. Hiott died in 1996, long before Reynolds successfully challenged the warnings, the evidence was not legally relevant.
The trial court found the evidence of Reynolds’ federal litigation relevant to the issue of punitive damages. This evidence was admitted through Hiott’s expert historian and on cross-examination of a Reynolds witness; however, the evidence was discussed only briefly during an extensive trial. The graphic wai-nings at issue were not admitted at trial.
On the issue of the statute of repose, section 95.031(2), Florida Statutes, Reynolds argued below that Hiott could only recover on her fraudulent concealment and fraud-based conspiracy claims to the extent they rested on conduct that occurred after May 5, 1982, twelve years before the Engle suit was filed. Reynolds argued that an action for fraud under section 95.11(3), Florida Statutes, must be brought “within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.” § 95.031(2)(a), Fla. Stat. Reynolds requested that the trial court instruct the jury that to “find Reynolds liable on [Hiott’s fraud-based claims], you must find that Mr. Hiott reasonably relied to his detriment, after May 5, 1982, on a statement fraudulently concealing material facts. Reliance on statements prior to that date cannot by law be a basis for liability.” Reynolds proposed a similar question for the verdict form. The trial court denied both requests.
The jury found for Hiott in Phase I on her claims of strict liability, negligence, and fraudulent concealment, and awarded $1.6 million to her and $225,000 to Mr. Hiott’s son by a previous marriage, for a total award of $1,825 million. The jury found for Reynolds on the conspiracy claim. In its determination of comparative negligence, the jury assigned sixty percent of the fault to Mr. Hiott, and assigned Reynolds forty percent of the fault. The jury found in Phase I that Hiott was entitled to punitive damages; however, in *477 Phase II, the jury found that Hiott should receive zero dollars in punitive damages.
Hiott moved for entry of final judgment in the full amount of compensatory damages, arguing that there should be no reduction based on Mr. Hiott’s fault because Reynolds committed an intentional tort, and thus Florida’s comparative fault statute, section 768.81, Florida Statutes, did not apply. In opposition, Reynolds made two arguments. First, because Hiott’s operative complaint, proposed jury instructions and jury comments did not expressly limit Hiott’s admission of partial fault to her negligence and strict liability claims, Reynolds argued that the exception for intentional tort in the comparative fault statute did not apply. Second, Reynolds argued, the comparative fault statute applies to actions, and not claims; thus, because Hiott’s case is in essence a negligence action, Reynolds asserts, the rule excluding the application of comparative negligence did not apply.
The trial court did not address Reynolds’ second argument regarding the nature of Hiott’s action, but instead it found Hiott waived any argument against reducing the judgment, because she sought “apportionment of fault and damages” in her complaint. Thus, the trial court found this case distinguishable from an earlier trial court ruling, which this court affirmed in R.J. Reynolds Tobacco Co. v. Sury, 118 So.3d 849 (Fla. 1st DCA 2013), because, here, Hiott did not assert in her complaint that any comparative negligence was solely limited to the claims of negligence. Neither did Hiott in any manner assert to the jury that Mr. Hiott’s comparative fault would not be applicable to the claims of intentional tort.
The trial court also found that the verdict form would be misleading if the court were to exclude Hiott’s comparative fault, citing Foreline Security Corp. v. Scott, 871 So.2d 906, 911 (Fla. 5th DCA 2004). The trial court concluded that based “on this statement alone, it is likely that the amount of the jury verdict reflected the jury’s intention that Plaintiff would actually recover an amount of damages which was smaller than its award.” Thus, the trial court accordingly reduced the total damage award from $1,825 million to $730,000. This ruling is the basis of Hiott’s cross-appeal.

ANALYSIS

Appeal

Reynolds argues that the trial court reversibly erred by admitting evidence that Reynolds successfully prevailed in its federal action against the Food and Drug Administration’s proposed new and graphic tobacco warnings. We hold that even if error occurred, it was harmless, because there is no reasonable possibility that the evidence affected the verdict, as the jury awarded zero dollars in such damages in Phase II of the trial, despite finding that Hiott was entitled to punitive damages in Phase I. Tallahassee Mem’l Reg’l Med. Ctr. v. Meeks, 560 So.2d 778, 782 (Fla.1990) (“Considering the totality of the evidence, we conclude that the introduction of this one privileged statement did not prejudicially affect the jury’s determination of negligence and that no reversible error occurred in its admission.”). In addition, the challenged evidence was very limited in its scope during an extensive jury trial, and the graphic warnings themselves were not admitted into evidence; thus, we conclude that the evidence could not have contributed to the verdict on compensatory damages.
The legislature has directed in section 59.041, Florida Statutes:
No judgment shall be set aside or reversed, or new trial granted by any *478 court of the state in any ... civil [cause of action] ... on the ground of ... the improper admission or rejection of evidence ..., unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.
Here, while it may be correct that it would be improper to allow a jury to determine liability based on Reynolds’ successful efforts to enforce its legal and constitutional rights, there is no likelihood that the brief testimony resulted in a “miscarriage of justice,” as this harmless-error statute has been interpreted by our court; that is, the result here would not have been different but for the admission of this evidence. Nat’l Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000).
This court’s harmless-error standard in civil cases has been described as imposing a lesser burden on the party benefiting from the error, but we would affirm under any other appellate standard used in other civil cases. See generally, Special v. Baux, 79 So.3d 755, 768 (Fla. 4th DCA 2011) (en banc), rev. granted, Special v. West Boca Med. Ctr., 90 So.3d 273 (Fla.2012). This court has held that the test for harmless error in civil cases is whether “ ‘a different result may have been reached.’ ” Hogan v. Gable, 30 So.3d 573, 575 (Fla. 1st DCA 2010) (citing Blackmon, supra). Reviewing this record in its totality, there is simply no reasonable possibility that the evidence affected the fact finder, and certainly there is no reasonable possibility that the result would have been different, had the evidence not been admitted.
Reynolds’ second argument asserts that the trial court erred in denying its requested jury instruction on the statute of repose, section 95.031(2), Florida Statutes. Reynolds acknowledges that this issue may be foreclosed to it by this court’s decision in R.J. Reynolds Tobacco Company v. Webb, 93 So.3d 331 (Fla. 1st DCA 2012), but if so, Reynolds asserts that this decision directly conflicts with Philip Morris USA, Inc. v. Hess, 95 So.3d 254 (Fla. 4th DCA 2012), rev. denied, 117 So.3d 412 (Fla.2013).
In Webb, this court cited Laschke v. Brown & Williamson Tobacco Corporation, 766 So.2d 1076, 1079 (Fla. 2d DCA 2000), for the proposition that in interpreting the statute of repose, the last act done in furtherance of the conspiracy triggers the statute, thus determining that the statute would not run until the conspiracy had been completed. In Hess, by contrast, the Fourth District held that the statute of repose barred a claim for punitive damages based on fraudulent concealment, where the jury specifically found that the plaintiff relied only on conduct that occurred twelve years before the filing date of the Engle class action. We hold that our prior decision in Webb does foreclose relief to Reynolds here, but we certify conflict between Webb and the Fourth District’s decision in Hess.
Reynolds’ third argument on appeal asserts that the trial court’s application of the Engle findings to allow Hiott to establish elements of her claims violates Reynolds’ federal due process rights. Réynolds asserts that its due process rights require that Hiott prove that the specific issue relevant to her case was actually decided in her favor in the prior litigation, citing Fayerweather v. Ritch, 195 U.S. 276, 299, 25 S.Ct. 58, 49 L.Ed. 193 (1904). Reynolds acknowledges that its argument has been rejected by the Florida Supreme Court in Philip Morris USA, Inc. v. Douglas, 110 So.3d 419 (Fla.2013), cert. denied, — U.S. -, 134 S.Ct. 332, *479 187 L.Ed.2d 158 (2013), but seeks to preserve it for further review. We reject this argument and affirm on the authority of Douglas.

Cross-Appeal

Standard of Review

On cross-appeal, Hiott asserts she is entitled to the full award of damages, despite the jury’s finding of Mr. Hiott’s comparative negligence, because Reynolds was found liable for an intentional tort. Hiott asserts that the standard of review on this issue is de novo. See Van v. Schmidt, 122 So.3d 243 (Fla.2013) (trial court’s erroneous conclusions of law in order granting new trial are not entitled to deference, but reviewed de novo). Reynolds argues, however, that in Sury, this court applied an abuse of discretion standard of review to the claim that the trial court incorrectly applied the comparative fault statute to an intentional tort. 118 So.3d at 851 (“[W]e find no abuse of discretion in the trial court’s determination that ... this action ‘actually had at its core an intentional tort by someone.’ ”) (quoting Merrill Crossings Assocs. v. McDonald, 705 So.2d 560, 563 (Fla.1997)). As we previously noted, the trial court found that Hiott waived her argument on this issue, by failing to inform the jury that Mr. Hiott could not be at fault for any intentional misconduct of Reynolds.
This court and other district courts have held that a trial court’s finding of waiver is reviewed for abuse of discretion. Seaside Cmty. Dev. Corp. v. Edwards, 573 So.2d 142, 146 (Fla. 1st DCA 1991) (“[I]t was within the trial court’s discretion to conclude that Seaside waived its right to require the additional escrow account deposit.”); Young v. G & S Bldg. Supply, Inc., 603 So.2d 667, 668 (Fla. 4th DCA 1992) (“A question of fact existed as to whether there was a waiver. We cannot say that the trial court abused its discretion by factually finding no waiver.”) (internal citation omitted). Here, however, the facts are not in dispute, and we are required to determine only whether the trial court correctly found a waiver of the application of the statute on the basis of these undisputed facts.
As the Florida Supreme Court has noted: ‘Waiver is the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right.” Major League Baseball v. Morsani, 790 So.2d 1071, 1077 n. 12 (Fla.2001) (citing Kissimmee Util. Auth. v. Better Plastics, Inc., 526 So.2d 46, 48 (Fla.1988) (holding that statute of limitations defense is an affirmative defense which must be pleaded at trial, and failure to raise affirmative defense before opposing party files motion for summary judgment waives affirmative defense)). To decide whether a party voluntarily relinquished a right necessarily requires a factual inquiry, at least in part. Furthermore, even where facts are undisputed, we think that a trial court’s decision such as this, which evaluates the impact of a potential waiver based on an extensive trial, merits due deference. Thus, we conclude that our standard of review is whether the trial court here abused its discretion.
Hiott asserts that the trial court erred-when it applied comparative fault to reduce the compensatory damages award, because Florida law provides that a comparative fault defense does not apply to intentional torts, and she asserts that this precludes waiver. § 768.81(4)(b), Fla. Stat.; Mazzilli v. Doud, 485 So.2d 477, 480 (Fla. 3d DCA 1986). Hiott relies on this court’s decision in Sury, where we held that section 768.81(4)(b), Florida Statutes, precluded a reduction of damages where, much like here, the case was essentially *480 based on intentional misconduct. 118 So.3d at 852. Accordingly, Hiott asserts that because Reynolds’ fraudulent concealment of material information concerning the health risks and addictive nature of cigarette smoking was a legal cause of her husband’s death, the defense of comparative fault did not apply as a matter of law. Moreover, Hiott argues, the trial court’s application of Reynolds’ comparative fault defense was error, because it violated the sound public policy embodied in the comparative fault statute — a person who intentionally harms another should not benefit from allocation of fault or contribution.
At oral argument, Hiott asserted that this court should hold that an Engle plaintiff is allowed to acknowledge a decedent’s fault to the jury, without commenting on the legal effect of such fault on the damage award, pending the jury’s decision as to whether the defendant was liable for both negligence and intentional torts, or negligence only. If the latter should occur, according to Appellee, then comparative fault would apply; if the former, the trial court should be required to disregard the jury’s comparative fault finding and decline to reduce the damages award under section 768.81(4), Florida Statutes.
Reynolds urges this court to affirm the trial court’s finding that Hiott waived her argument on cross-appeal. Reynolds argues that this case is distinguishable from Sury, because in that case, we recognized that the plaintiff clearly informed the jury that it was only conceding the possibility of comparative fault to claims of negligence, and not to claims of intentional tort: “the plaintiffs Complaint clearly and specifically sought ‘potential apportionment of fault and damages on all counts other than those alleging intentional torts.’ ” 118 So.3d at 851. In addition, this court found in Sury that “Dr. Sury never argued to the jury or the court that the damages for his father’s terminal illness should be reduced by his portion of fault.” Id.
Regarding her complaint, Hiott argues that she could not have intended to invite the jury or the court to apportion fault to an intentional tort claim, as such is not allowed by law. Furthermore, she asserts that the trial court’s ruling doing so failed to construe the pleadings “to do substantial justice,” as required by Florida Rule of Civil Procedure 1.110(g). Hiott notes that “ ‘it is well established Florida law that a complaint ... which is but a tentative outline of a pleader’s position is inadmissible as evidence to prove a fact alleged therein.’ ” (citing Adams v. Merrill Lynch, 392 So.2d 4, 5 (Fla. 4th DCA 1980)). Hiott also relies on Straub v. Village of Wellington, 941 So.2d 1269, 1270 (Fla. 4th DCA 2006), for the proposition that legal conclusions within complaints cannot raise disputed issues of fact or determine legal issues. Hiott further notes that the jury did not receive the complaint as evidence. Thus, she argues, the trial court erred in finding any waiver based on her complaint.
Reynolds counters this argument by citing well-established law that parties are bound by the allegations of their complaint. United Bank of Pinellas v. Farmers Bank of Malone, 511 So.2d 1078, 1080 (Fla. 1st DCA 1987); accord Hunt v. Corrections Corp. of Am., 38 So.3d 173, 177 (Fla. 1st DCA 2010); Carvell v. Kinsey, 87 So.2d 577, 579 (Fla.1956); see also, e.g., Fernandez v. Fernandez, 648 So.2d 712, 713 (Fla.1995) (“We further point out that a party is bound by the party’s own pleadings.”); United States v. Century Fed. Sav. & Loan Ass’n of Ormond Beach, 418 So.2d 1195, 1197 (Fla. 5th DCA 1982) (“The parties to an action are bound by the allegations in their pleadings.... ”).
Here, Hiott failed to inform the jury that she intended to reserve her right to assert the inapplicability of comparative *481 fault to any of her claims. Furthermore, as the trial court noted, the jury instruction informed the jury that in determining damages, “you should not make any reduction because of the fault you charge to Kenneth Hiott. The Court will enter a judgment based on your verdict and will reduce the total amount of damages by the percentage of fault which you charge to Kenneth Hiott.” (Emphasis added.) Accordingly, the trial court found that “it is likely ... the jury verdict reflected the jury’s intention that Plaintiff would actually recover an amount of damages which was smaller than its award.” For support of its conclusion, the trial court cited Foreline, in which the Fifth District held that the trial court erroneously refused to apportion comparative fault, after instructing the jury to allocate such fault, because “[t]he jury may have reached a different verdict on damages had it known that Foreline would bear the entire amount.” 871 So.2d at 911. We agree that this rationale applies here.
Hiott distinguishes Foreline on the basis that its holding on the application of comparative fault did not hinge on the intentional tort question, as the Fifth District reversed on the intentional tort claim; thus, only negligence claims remained, and comparative fault had to apply there as a matter of law. We think the rationale of Foreline on this point is not dependent on section 768.81, Florida Statutes, but on the simple premise that it would be misleading to the jury to: 1) fail to inform them that no comparative fault would apply to the intentional tort claims; 2) inform them that they must allocate comparative fault, without distinction between the intentional tort and negligence claims; 3) tell them that the trial court would “reduce the total amount of damages by the percentage of fault which you charge to Kenneth Hiott”; and 4) then refuse to apply comparative fault to the verdict. In essence, to adopt Hiott’s view would allow a party to invite a jury to commit error, and then allow the party issuing the invitation to challenge the error on appeal. But appellate courts do not reverse judgments based on invited error. Pope v. State, 441 So.2d 1073, 1076 (Fla.1983) (“A party may not invite error and then be heard to complain of that error on appeal.”).
Furthermore, we find it significant that Hiott is not arguing that comparative fault should be applied only to her negligence claims. In fact, she argues that “the Court should enter judgment for the full amount of damages, because, under Florida law, comparative fault is not a defense to Carolyn Hiott’s successful intentional tort claim.” This point was reiterated at oral argument. In other words, even if the jury was misled on the issue of comparative fault, Hiott asserts that it was the jury’s function to make certain factual determinations, and not legal rulings; thus, the trial court erred in refusing to award the full damage amount, because comparative fault cannot be applied to a successful intentional tort claim.
Reynolds persuasively argues that Hiott in fact encouraged the jury, from voir dire through closing argument, that she accepted that her deceased husband was partially at fault for his smoking-related illness and death. Thus, she expected the jury to allocate some fault to her late husband. As Reynolds notes, Hiott “used the admission that Mr. Hiott was partly at fault as a tactic to secure an advantage with the jury throughout the trial; she cannot now seek to have it both ways by avoiding comparative fault after the verdict.” We agree, as did the trial court. Thus, we find no abuse of discretion in the trial court’s ruling that Hiott waived any argument regarding the application of Mr. Hiott’s comparative fault *482 to reduce the compensatory damages in this case.
In conclusion on this issue, we reject Hiott’s argument that Reynolds should be estopped from asserting waiver, because Reynolds informed the jury in the punitive damages phase that such damages were unnecessary, as the jury had already “awarded $1,825,000 against Reynolds and that message has been received.” Additionally, Hiott notes that the jury declined to award punitive damages. By this argument, however, Reynolds did not specifically assert that the jury’s finding on comparative fault would be disregarded, although such an implication may be fairly inferred. Had Reynolds made such a specific statement, we might agree with Hiott; however, the record does not establish that Reynolds clearly took this position with the jury. And as Hiott herself argues, a determination of waiver must be based on clear and unmistakable facts, which are not present on this point.
Conclusion
We affirm on all issues raised by both parties, but certify conflict with the Fourth District’s decision in Philip Morris USA, Inc. v. Hess, 95 So.3d 254 (Fla. 4th DCA 2012), rev. denied, 117 So.3d 412 (Fla.2013), on the issue of whether the trial court reversibly erred in denying Reynolds’ requested jury instruction and verdict question on the statute of repose, section 95.031(2), Florida Statutes.
AFFIRMED; CONFLICT CERTIFIED.
SWANSON and MAKAR, JJ., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).