EDWARDS, J.
Philip Morris USA, Inc. (“Appellant”) appeals the judgment entered against it following a jury trial of an Engle-progeny case.[1] Of the several points raised by Appellant, the only one that merits discussion is whether the trial court erred in entering-final judgment without application of -comparative fault. Under the circumstances of this case,- the damages should have been apportioned among the parties based upon comparative fault. We reverse as to that issue only, and remand the case for entry of an amended final judgment awarding damages against the liable parties on the basis of each party’s percentage of fault.
Lauren Greene (“Appellee”), trustee for the bankruptcy estate of John J. Rizzuto, brought this lawsuit-on Mr. Rizzu-to’s behalf against Appellant and Liggett Group, Inc. (collectively “defendants”). From 1961 until 2000, Mr. Rizzuto was a smoker of cigarette brands manufactured by Appellant and other brands manufactured by co-defendant, Liggett Group, Inc.[2] According to Mr. Rizzuto, he made several unsuccessful attempts to quit smoking in the 1970s, 1980s, and 1990s. As a result of smoking, he contracted chronic obstructive pulmonary disease (“COPD”), which was formally diagnosed in 1994. Mr. Rizzuto successfully quit smoking after he was subsequently hospitalized for treatment of bronchial spasms, a condition related to his COPD.
The trial proceeded in accordance with the Florida Supreme Court’s holding that the Engle jury’s findings as to the following facts would have res judicata effect in the individual class members’ cases: (1) smoking causes several serious diseases, including COPD; (2) the nicotine in cigarettes is addictive; (3) all defendants in the Engle class action, including Appellant, placed cigarettes on the market that were defective and unreasonably dangerous; (4) all defendants in the Engle case concealed information known or available about the adverse health effects, and/or the addictive nature of smoking; (5) the Engle defendants concealed this information with the intention that the public would rely on the non-disclosure to their detriment, (6) all Engle defendants sold defective cigarettes; (7) all Engle defendants sold cigarettes that did not comply with the representations of fact they made; and (8) all Engle defendants were negligent. Engle, 945 So.2d at 1256.
The case went to trial based upon Ap-pellee’s fourth amended - complaint, which asserted claims of strict products liability, negligence, fraud by concealment, and conspiracy to commit fraud by concealment. Because Mr. Rizzuto was an Engle class member, Appellee was not required to prove all of the elements of strict liability or negligence.' The verdict form used in this case did not require the jury to respond to any questions regarding strict liability or negligence, but included two *314 questions as to whether the defendants concealed and conspired to conceal information from Mr. Rizzuto. The jury,, in its verdict, found that Mr. Rizzuto was a member of the Engle class and that both defendants concealed and conspired to conceal information from Mr. Rizzuto regarding the risks, consequences, and addictive nature of smoking cigarettes.
In its verdict, the jury apportioned fault for causing Mr. Rizzuto’s COPD as follows: fifty-five percent to Appellant, twenty-five percent to Liggett Group, LLC, and twenty percent to Mr. Rizzuto. Despite Appellant’s timely and repeated requests, the trial court refused to apportion damages based upon each party’s fault, instead entering judgment in the full amount of Mr. Rizzuto’s damages, jointly and severally, against defendants.
During both the opening statement and closing arguments, Appellee repeatedly referenced Mr. Rizzuto’s acceptance of his portion of responsibility for his COPD.[3],[4] Such statements were invitations by Ap-pellee to the jury to find Mr. Rizzuto partially at fault. Appellee framed the statements to the jury in terms of Mr. Rizzuto wanting to do what is fair by a determination of what portion of the shared responsibility belonged to him and what portion of the shared responsibility belonged to each defendant. These repeated statements from Appellee that Mr. Rizzuto’s “accepts his fault, and wants a fair portion of the responsibility” were made with regard to all the claims he pursued, including specifically the claims of concealment and conspiracy to conceal information regarding the risks and addictive nature of cigarettes. Appellant correctly argues that Appellee cannot take the position with the jury that responsibility will be shared, and then argue against apportioned damages in ■ the final judgment. As the cases discussed below demonstrate, whether labeled “estoppel” or “waiver,” taking two such diametrically opposed positions in the same case is misleading, unfair, and unacceptable.
“It is a general rule that parties will be held to the theories upon which they secure action by the court, and in pursuance of the rule that a party may not take inconsistent positions in a litigation.” Federated Mut. Implement & Hardware Ins. Co. v. Griffin, 237 So.2d 38, 41 (Fla. 1st DCA 1970). “One who assumes a par *315 ticular position or theory in a case is judicially estopped in a later phase of that same case, or in another case, from asserting any other or inconsistent position toward the same parties and subject matter.” In re Adoption of D.P.P., 158 So.3d 683, 639 (Fla. 5th DCA 2014) (citing Griffin with approval 237 So.2d at 41-42). “In general, the doctrine of estoppel prevents a person from unfairly asserting inconsistent positions.” Id. at 638-39. “In its final analysis, the foregoing rule of estoppel is founded upon legal and equitable concepts of justice under the law, or perhaps on such popular expressions as ‘y°u. can’t blow both hot and cold at the same time’ or ‘you can’t have your cake and eat it, too.’ The quintessence, however of this estoppel rule is probably the integrity of our system of justice.” Griffin, 237 So.2d at 42.
Appellee’s repeated statements, inviting the jury to find shared responsibility, could not have left the jury with any other impression than that Appellee was accepting some measure of fault with respect to each of her claims. In Foreline Security Corp. v. Scott, 871 So.2d 906, 911 (Fla. 5th DCA 2004), we found that the trial court erred when it did not apply the comparative negligence statute when the jury was “misled ... into believing that it was allocating fault fifty-fifty between Foreline and USB.” Id. at 911. This was reversible error because “[t]he jury may have reached a different verdict on damages had it known that Foreline" would bear the entire amount.” Id. The jury in this case was likewise misled by Appellee’s counsel.
In R.J. Reynolds Tobacco Co. v. Hiott, 129 So.3d 473 (Fla. 1st DCA 2014), the First District Court of Appeal found the reasoning of Foreline specifically applicable to an Engle-progeny ease. “Hiott in fact encouraged the jury from voir dire through closing argument, that she accepted that her deceased husband was partially at fault for his smoking-related illness and death. Thus, she expected the jury to allocate some fault to her late husband.” Id. at 481. “As Reynolds notes, Hiott used the admission that Mr. Hiott was partly at fault as a tactic to secure an advantage with the jury throughout the trial; she cannot now seek to have it both ways by avoiding comparative fault after the verdict.” Id. (internal quotation marks omitted). The First District Court of Appeal agreed with Reynolds and upheld the trial court’s finding of waiver by Mrs. Hiott. Id. at 481. In the instant case, Appellee’s repeated, explicit, tactical directions encouraging the jury to find Mr. Rizzuto partially at fault and to determine what percentage of fault was to be shared by each of the parties will be, given binding effect as to all claims.
Furthermore, Appellee’s counsel directly assured the jury that comparative fault would be taken into account and explained how the court would do so: “Mr. Rizzuto accepts his fault and wants a fair portion of the responsibility. And, you heard the instructions from the Court, I think it’s instruction 10, I believe, but there will be an instruction that guides you on this. You put the percentages down, the Court handles the rest. You don’t reduce the damages yourself. You don’t take the numbers out and do the math yourself, the Court does that.” For Appellee to now argue that there was no reasonable possibility that Appellee’s tactics may have resulted in the jury inflating the damages to account for reduction due to application of comparative fault insults the intelligence of jurors and flies in the face of the burden to prove harmless error under Special v. West Boca Medical Center, 160 So.3d 1251, 1257 (Fla.2014).
*316 Accordingly, under the circumstances of this case, we find the trial court erred by not applying' comparative fault. We remand with directions for the trial court to enter an amended final judgment against each party liable on the basis of such party’s percentage' of fault and not on the basis of .joint and several liability. In all other aspects, the final judgment is ■ affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
EVANDER, J. and MALTZ, H.M., Associate Judge, concur.

. Engle v. Liggett Group, Inc,, 945 So.2d 1246 (Fla.2006).

. A settlement was reached between Liggett 'Group, LLC and Appellee'during this appeal. Thus, Liggett Group is no longer a party to the appeal.

. Examples in Appellee’s opening statement include: “Was John Rizzuto impacted by the tobacco industry’s 50-year conspiracy to conceal? ... And I think there was some talk about relieving responsibility. No one is looking to relieve any responsibility. In this case, Mr. Rizzuto accepted his responsibility. He's asking you specifically to put responsibility on him. Our position is that it’s partial, it’s not all his fault, it’s not all his responsibility. And the evidence will show you why it’s a shared responsibility in a case like this, in this case.” "You know, John Rizzuto accepts his fault, and'he wants a fair portion of the responsibility. We would be disingenuous to come in here and say it’s all their fault. That’s not the case; it’s shared. There is no doubt about it. The only question is what portion belongs on the tobacco companies who created and designed nicotine delivery devices, they marketed them to ensnare teens into the addiction cycle, and then concealed the health consequences and the addictiveness, those things from the findings, what is their portion of responsibility.”

. Examples in Appellee’s closing arguments include: “So looking at [question] number 4 [on the verdict form], we’ve told you this already, that Mr. Rizzuto accepts his fault and [Defense objection; overruled] [a]ccepts his fault and wants a fair portion of the responsibility.” “The only question the evidence has shown is what portion belongs on the tobacco companies who created and designed nicotine delivery devices, marketed, to ensnare teens into the addiction cycle, and then made them customers for life, what is their fair share of responsibility?”