DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC.** and **R.J. REYNOLDS TOBACCO COMPANY,**
Appellants/Cross-Appellees,

v.

**GERTRUDE MARCHESE,** as Personal Representative for the Estate of
SALVATORE MARCHESE,
Appellee/Cross-Appellant.

No. 4D16-2003

[November 22, 2017]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case Nos. 2013CV 002849 (19) and 08-80000 (19).

Joseph H. Lang, Jr., of Carlton Fields Jorden Burt, P.A., Tampa, and Scott A. Chesin of Mayer Brown LLP, New York, NY, for appellant/cross-appellee Philip Morris USA Inc.

Gregory G. Katsas of Jones Day, Washington, DC; and Charles R.A. Morse of Jones Day, New York, NY, for appellant/cross-appellee R.J. Reynolds Tobacco Co.

Lance V. Oliver and Lisa M. Saltzburg of Motley Rice LLC, Mt. Pleasant, SC; Howard M. Acosta of Law Offices of Howard M. Acosta, St. Petersburg; Kent G. Whittemore, Hutch Pinder and Erin W. Lohmiller of The Whittemore Law Group, P.A., St. Petersburg; and Bruce H. Denson of Bruce H. Denson, P.A., St. Petersburg, for appellee/cross-appellant.

KLINGENSMITH, J.

Appellee Gertrude Marchese filed a wrongful death action against appellants, Philip Morris USA, Inc., ("PMUSA") and R.J. Reynolds Tobacco Company ("Reynolds"). Appellee sought compensatory and punitive damages under the theories of strict liability, negligence, fraud by concealment, and conspiracy to commit fraud by concealment. After appellee obtained a compensatory and punitive damages award, the trial court reduced the jury's compensatory damages award by the amount of comparative fault attributed to the decedent.

Appellants raise various arguments on appeal, and we affirm on those arguments without further discussion. On the cross-appeal, appellee argues that the appellants waived their right to reduce the compensatory award by repeatedly stating that the award would not be reduced. We agree, and reverse for entry of judgment in the full amount of the jury's verdict.

"[A] trial court's finding of waiver is reviewed for abuse of discretion." *R.J. Reynolds Tobacco Co. v. Schoeff*, 178 So. 3d 487, 492 (Fla. 4th DCA 2015) (quoting *R.J. Reynolds Tobacco Co. v. Hiott*, 129 So. 3d 473, 479 (Fla. 1st DCA 2014)). "Waiver is the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right." *Hiott*, 129 So. 3d at 479 (quoting *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 n.12 (Fla. 2001)). However, courts apply a de novo standard when considering the apportionment of damages under section 768.81(4), Florida Statutes (2011). *See id.* at 495. *See also Philip Morris USA, Inc. v. Boatright*, 217 So. 3d 166, 172 (Fla. 2d DCA 2017) ("[W]e review de novo the legal issue of whether the conduct qualifies as negligence or as an intentional tort.").

At the Phase I charge conference, the parties disputed a proposed jury instruction on damages. Counsel for the appellants stated, "We've been very clear in our pleadings and in our arguments that we are seeking apportionment only on the non-intentional torts not on the intentional torts." In her proposed jury instructions, appellee suggested a damages instruction stating: "Please note that if you find for Plaintiff on either or both of her claims for fraudulent concealment and/or agreement to conceal, the Court will not reduce the amount of Plaintiff's damages by the percentage of fault you assign." Her proposed verdict form similarly read: "[Y]ou should not make any reduction because of any responsibility you charge to [the decedent]. . . . There will be no such reduction if you find for the Plaintiff on his claims for concealment or conspiracy to conceal." Appellants proposed a damages instruction devoid of such a comparative fault instruction. They averred, "[Appellants] acknowledge that this Court has previously held that comparative fault does not apply to *Engle*[1]

---

[1] This case was filed as an *Engle* progeny case. The First District succinctly discussed the *Engle* class action:

> *Engle* began as a smokers' class action lawsuit filed in 1994 against cigarette companies and tobacco industry organizations seeking damages for smoking-related illnesses and deaths. The class included all Florida "citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and

2

plaintiffs' intentional tort claims. For preservation purposes, we respectfully maintain our argument that comparative fault should apply even if Plaintiff succeeds on those claims."

During Phase I closing arguments, appellee's counsel argued, "[T]here are not going to be any reduction[s] for comparative fault if you find for us on the fraud claims." Counsel for PMUSA added, "If you decide based on the facts that [the decedent] is 95 percent responsible, if you answer yes to question 5 or question 6, comparative fault is out the window and [appellee] gets a hundred percent of the damages."

At the conclusion of the Phase I trial, the trial court instructed the jury consistent with the appellants' arguments, that "in determining the total amount of damages, you should not make any reduction because of the responsibility of [the decedent]. . . . There will be no such reduction if you find for the Plaintiff on her claims for concealment or conspiracy to conceal."

The jury ultimately allocated 22.5% fault to Reynolds and PMUSA, respectively, and 55% to the decedent. They also found in favor of appellee on her intentional tort claims.

In Phase II opening statements, counsel for Reynolds acknowledged that the jury awarded "a significant amount of money, one million dollars." He reminded the jury that "there will be no reduction of that million dollars." Further, counsel stated, "[A]t the end of the day, [appellee's] . . . award will not be reduced by that 55 percent[.]"

In that same vein, during Phase II closing arguments, counsel for Reynolds suggested the jury had already "fully compensated [appellee] with [an] award of $1 million[,]" and implied she would receive all of it by stating that "[the jury] sent a loud and clear message with that reward."

---

medical conditions caused by their addiction to cigarettes that contain nicotine." [*Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1256 (Fla. 2006)]. The tobacco company defendants included the appellant in this case, R.J. Reynolds Tobacco Company ("RJR"). In *Engle,* the supreme court decertified the class, but allowed certain jury findings from the class action to have res judicata effect in any subsequent lawsuits by individual class members seeking damages from the defendants.

*R.J. Reynolds Tobacco Co. v. Martin,* 53 So. 3d 1060, 1062–63 (Fla. 1st DCA 2010).

He added, "[One] million dollars . . . is a significant amount of money . . . . To be clear that money is going to [appellee]."

Counsel for PMUSA assured the jury that, because it determined the appellants were liable for the intentional torts, "there will be no reduction in damages." He stated, "Comparative fault will not apply, and [appellee] will receive 100 percent of the million dollars that you awarded." Counsel continued, "In your Phase I verdict you awarded $1 million to [appellee]. No matter what the future holds for [appellee], one thing you can be sure of is that financially she will never want for anything throughout the rest of her life." He added, "[I]n this phase of the trial, you will have to determine, based on everything you've heard, whether there is a need to award additional money to [appellee] to punish and deter [PMUSA] and other companies."

PMUSA's counsel also argued in his closing:

Now, before I talk more about the Court's instructions, I want to spend just a few minutes talking about the comparative fault.

In your Phase I verdict, you decided that [the decedent] shares some of the responsibility for his decision to smoke, and you allocated 55 percent fault to him.

*But because you answered yes to Questions 5 and 6, there will be no reduction in damages. Comparative fault will not apply, and [appellee] will receive 100 percent of the million dollars that you awarded.*

. . . .

*In [Phase II], if you award punitive damages, they will not be reduced by the amount of [the decedent's] fault.* You know, obviously it's your decision, *but I just want to, again, make sure that we all understand exactly the effect of the decisions that you make.*

(Emphasis added). At the conclusion of Phase II, the jury awarded appellee punitive damages totaling $500,000, with $250,000 assessed against each company.

After trial, the appellants moved to apply Florida's comparative fault statute to the compensatory damages award by requesting a reduction in

4

the award consistent with the jury's allocation of fault. Before ruling on the motion, the trial court entered a final judgment for the entire compensatory amount. However, during the hearing on the appellant's motion for the reduction, the trial court stated:

> Regarding the motion for comparative fault, Counsel, I, you know, ruled consistently throughout that I didn't think comparative fault was applicable. I was, you know, educated by the Fourth DCA in their recent decision in *Schoeff*[2] and it seems to me you're entitled to it. I don't believe there's any waiver, respectfully. This is something that was hotly contested throughout every one - - each and every one of the trials.

The trial court considered the decedent's comparative fault of 55%, and entered an Amended Final Judgment that reduced the compensatory damages award from $1,000,000 to $450,000. This appeal followed.

In *Schoeff*, the plaintiff cross-appealed the trial court's order reducing the compensatory damages award based on the plaintiff's comparative fault. 178 So. 3d at 492. The plaintiff alleged that fraudulent concealment was an intentional tort, and comparative fault was barred under section 768.81(4). *Id.* There, Reynolds countered that the trial court correctly applied comparative fault. *Id.* This court held, "Section 768.81 does not permit the reduction of compensatory damages by plaintiff's comparative fault where the suit is based upon an intentional tort ('the intentional tort exception')." *Id.*

In its analysis of Reynolds' claim that the plaintiff waived any argument regarding the intentional tort exception, this court stated:

> The case with the most in depth discussion on waiver is *Hiott,* 129 So. 3d at 479–82. There, a tobacco plaintiff argued that the trial court improperly reduced her compensatory damages based on the smoker's comparative fault because she prevailed on her intentional tort claims against the tobacco companies. *Id.* at 479. The First DCA disagreed, holding that under the facts of the case, the trial court did not abuse its discretion in finding that the plaintiff invited the error by misleading the jury. *Id.* at 481. Specifically, the plaintiff "encouraged the jury, from voir dire through closing argument, that she accepted that her deceased husband was

---

[2] 178 So. 3d at 496.

5

partially at fault for his smoking-related illness and death. Thus, she expected the jury to allocate some fault to her late husband." *Id.* Indeed, the jury was instructed that it "should not make any reduction because of the fault you charge to [the smoker]. The Court will enter a judgment based on your verdict and will reduce the total amount of damages by the percentage of fault which you charge to [the smoker]." *Id.* However, the plaintiff "failed to inform the jury that she intended to reserve her right to assert the inapplicability of comparative fault to any of her claims." *Id.* at 480–81. Under the circumstances, the court concluded that the jury was likely misled to believe that its award would be reduced by its determination of comparative fault. *Id.* at 481–82. Thus, the jury may have reached a different verdict on damages had it known that the tobacco company would bear the entire amount. *See id.*; *see also Buonomo*, 138 So. 3d at 1053 n.3 (holding, without discussion, that any error in the reduction of a tobacco plaintiff's compensatory damages award was invited and/or waived by the plaintiff).

In *R.J. Reynolds Tobacco Co. v. Sury*, 118 So. 3d 849, 851 (Fla. 1st DCA 2013), the same court reached the opposite conclusion under slightly different facts. There, the First DCA held that the trial court did not abuse its discretion in finding a tobacco plaintiff did not waive application of the intentional tort exception. *Id.* The court based its conclusion on the facts that: 1) the plaintiff's "complaint clearly and specifically sought 'potential apportionment of fault and damages on all counts other than those alleging intentional torts;'" 2) the plaintiff "never argued to the jury or the court that the damages for his father's terminal illness should be reduced by his portion of fault;" and 3) "the defendants agreed to the verdict form which listed each cause of action, including the intentional torts, and requested the jury to indicate whether the defendants had committed each individual tort or not." *Id.*

*Schoeff*, 178 So. 3d at 493.

Also in *Schoeff*, the plaintiff conceded that comparative fault applied to negligence and strict liability claims, but not to intentional tort claims. *Id.* at 494. Plaintiff's counsel told prospective jurors that his client accepted partial responsibility, and focused his argument on comparative fault. *Id.* Thereafter, the trial court instructed the jury that if they found Reynolds guilty of negligence and product defect, they would be required to consider

6

comparative fault, but that the jury "should not make any reductions because of the responsibility of James Schoeff." *Id.* As a result, this court held "that the trial court did not abuse its discretion when it found that the plaintiff waived her intentional tort exception argument." *Id.* at 495. Under such circumstances, this court found that "reversing would unfairly allow the plaintiff to 'have it both ways.'" *Id.*

This court also discussed the "applicability of the comparative fault intentional tort exception to this suit." *Id.* We stated that "section 768.81 cannot be avoided simply because the action includes an intentional tort— rather the 'entire action' must be 'founded on an intentional tort.'" *Id.* Therefore, "at its core, Plaintiff's suit is a products liability suit based on conduct grounded in negligence." *Id.*

In this case, the appellants each pled the affirmative defense of comparative fault, and disagreed with a proposed jury instruction that comparative fault would not be applied. Nonetheless, they repeatedly referenced the fact that appellee would receive the entire compensatory damages award. Appellants did not reveal to the jury that they were going to seek comparative fault after the trial. They submitted their motion for comparative fault without knowing that, almost three weeks later, this court would release the *Schoeff* opinion.

Based on these facts, it seems clear that appellants always intended to seek a reduction based on comparative fault. But as we have previously stated, they cannot have it both ways. *See Schoeff*, 178 So. 3d at 495 ("It would be inequitable to allow Plaintiff to use 'the admission that [Mr. Schoeff] was partly at fault as a tactic to secure an advantage with the jury throughout the trial' and then completely avoid comparative fault after the verdict.") (quoting *Hiott*, 129 So. 3d at 481). Appellants' repeated suggestions to the jury that there would be no reduction of the compensatory damages award were made in hopes of minimizing the amount of punitive damages awarded. At no point did appellants' counsel inform the jury of their intent to seek a reduction of the compensatory damages award based on comparative fault, nor did they remain silent on the issue. Instead, appellants affirmatively represented that appellee would be fully compensated as a "shield" against the potential imposition of a large punitive damages award, all the while intending to use the comparative fault statute as a "sword" to reduce the amount awarded.

Nowhere is this more evident than during Phase II closing arguments when counsel for PMUSA stated, "If you believe that punitive damages are appropriate in this case, what I suggest you do is award an additional $225,000" based on the allocation of 22.5% fault to PMUSA. He

7

emphasized that "if you do that, one thing you can be sure of is that [appellee] *will leave the courtroom with $1.225 million. And if you did that, then the twin goals of compensation and punishment will be served.*" (Emphasis added). It appears that this strategy was successful in influencing the jury's decision since they awarded appellee $250,000 per appellant in punitive damages, closely approximating the amount suggested by the appellants.

Whether it be in politics or trial strategy, "elections have consequences." In both *Schoeff* and *Hiott*, we held that a party waives his right to object to a reduction when he tells the jury that comparative fault will apply. *Schoeff*, 78 So. 3d at 495; *Hiott*, 129 So. 3d at 481. The reverse is also true. Appellants elected to waive their right to a reduction of the verdict when they repeatedly and expressly told the jury that comparative fault would not apply. *Philip Morris USA, Inc. v. Green*, 175 So. 3d 312, 314 (Fla. 5th DCA 2015) ("[W]hether labeled 'estoppel' or 'waiver,' taking two such diametrically opposed positions in the same case is misleading, unfair, and unacceptable."); *Foreline Sec. Co. v. Scott*, 871 So. 2d 906, 911 (Fla. 5th DCA 2004) (noting that the jury "may have reached a different verdict on damages had it known" how the comparative fault allocation would affect the verdict). Therefore, the trial court erred when it ruled that no waiver occurred.

We reverse the comparative fault reduction applied to the jury's verdict, and remand to the trial court for entry of a judgment in favor of appellee for $1.5 million and a determination of appellee's entitlement to attorneys' fees under section 768.79, Florida Statutes (2015). *See Kuhajda v. Borden Dairy Co. of Alabama, LLC*, 202 So. 3d 391, 396 (Fla. 2016).

We affirm without comment as to all other issues raised on the appeal and the cross-appeal.

*Affirmed in part, reversed in part, and remanded.*

CIKLIN, J., and BELANGER, ROBERT E., Associate Judge, concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***