DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTONIO F. DEFILIPPO, M.D.** and
**SOUTH FLORIDA PSYCHIATRIC SERVICES, INC.,**
Appellants,

v.

**GREGORY H. CURTIN** and **HILLARY B. CURTIN,**
as Successor Co-Personal Representatives of the
Estate of Michael J. Curtin, deceased,
for and on behalf of the Estate,
and the Survivors thereof,
Appellees.

No. 4D17-1477

[July 25, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia Wood, Judge; L.T. Case No. CACE 12-012918 (18).

Joelle C. Sharman, Jerome R. Silverberg and Cindy J. Mishcon of Lewis Brisbois Bisgaard & Smith LLP, Fort Lauderdale, for appellants.

Todd R. Falzone of Kelley Uustal, PLC, Fort Lauderdale, and Ronald D. Poltorack of Ronald D. Poltorack, P.A., Boca Raton, for appellees.

PER CURIAM.

The defendant physician and his medical practice (collectively "the physician") appeal from: (1) a jury verdict finding that the physician's negligent supervision of an advanced registered nurse practitioner ("ARNP") caused the death of a patient at a drug detoxification facility; and (2) the trial court's post-verdict order granting the estate's request to allocate 100% of the liability upon the physician, after the jury had found the physician 20% liable and the detox facility 80% liable as a *Fabre* defendant.

The physician raises several arguments on appeal. We conclude the trial court erred in three respects: (1) by precluding the physician from testifying that he was not at the detox facility when the patient was

admitted, and was not notified of the patient's existence until after the patient died; (2) by instructing the jury that the physician's alleged violation of section 458.348, Florida Statutes (2011), was evidence of negligence; and (3) by granting the estate's request to allocate 100% of the liability upon the physician, after the jury had found the physician 20% liable and the detox facility 80% liable as a *Fabre* defendant. We reverse and remand for a new trial.

## *Procedural History*

The physician served as the detox facility's medical director as an independent contractor. The ARNP was hired to provide nursing services for the facility as an independent contractor.

The ARNP's services included evaluating patients to determine whether they could be admitted into the facility or instead required hospital emergency room treatment. The ARNP was permitted to perform these services pursuant to sections 464.003(2) and 464.012(3), Florida Statutes (2011), which define the acts that an ARNP is permitted to perform under a physician's general supervision.

To perform under the physician's general supervision at this facility, the ARNP executed a "Collaborative Practice Agreement" with the physician. Under the agreement, the ARNP was authorized to perform any service for which she was licensed to practice, including admitting patients into the detox facility. As to the physician's responsibilities, the agreement provided, in pertinent part:

> The physician shall provide general supervision for routine health care and management of common health problems, and provide consultation and/or accept referrals for complex health problems. The physician shall be available by telephone or by other communication devices when not physically available on the premises. If the physician is not available, his associate as assigned will serve as backup for consultation, collaboration and/or referral purpose.

When the physician entered into the agreement, he was supervising "probably around eight" ARNPs at five to seven different facilities through similar agreements.

One evening, the patient arrived at the detox facility sometime before 8:00 p.m. At that time, the ARNP, but not the physician, was at the facility. The detox facility staff told the ARNP that the patient had track marks

2

consistent with intravenous drug use. Later in the evening, when the ARNP checked on the patient, he was sitting upright, speaking, and his vital signs were improving. The ARNP's clinical assessment was that the patient was experiencing withdrawal. Her plan was to begin the detox process the next morning.

Significantly, the ARNP did not contact the physician for consultation or review. Thus, the physician did not know of the patient's existence.

The ARNP left the detox facility around 11:00 p.m. Before leaving, she instructed the facility's staff to do a bed check on the patient every fifteen minutes and take his vital signs every thirty minutes.

Tragically, sometime in the early hours of the following morning, the patient died. The detox facility staff did not discover the patient's death until they checked on him hours later.

The medical examiner's autopsy concluded that the patient's cause of death was endocarditis, which is an acute bacterial infection of the inner lining of his heart chamber and valves. The medical examiner further concluded that the patient's recent intravenous drug use contributed to the endocarditis.

The patient's estate later sued the physician, the ARNP, and the detox facility.

The estate's claim against the physician ultimately was pled as a claim for negligent supervision of the ARNP. In the second amended complaint, the estate alleged that the physician violated a duty arising from section 464.012 to "maintain supervision for directing the specific course of medical treatment" rendered by the ARNP. The estate further alleged that the physician failed to comply with section 458.348, Florida Statutes (2011), by exceeding the maximum number of offices he could supervise in addition to his own primary practice location at the time of this incident.

The physician's answer alleged affirmative defenses, including that liability should be allocated to the detox facility as a *Fabre* defendant.

The physician later moved for partial summary judgment, essentially arguing that, as a physician, he owed no duty of care under section 464.012, because ARNPs are the subject of that statute. The trial court denied the motion, holding that, to the extent section 464.012 required an ARNP to work under a physician's supervision, section 464.012 created a duty of care for the manner in which the physician supervised the ARNP.

3

The estate ultimately entered into a settlement agreement with the ARNP and the detox facility. The estate's case against the physician was set for trial.

Before trial, the physician moved in limine to exclude evidence of his having exceeded the maximum number of offices he could supervise under section 458.348. The trial court denied that motion as well.

During the trial, the trial court sustained the estate's objections to the physician's attempt to testify that he was not at the detox facility during the ARNP's treatment of the patient and did not know of the patient's existence until after the patient's death.

At the close of the evidence, the estate moved for a directed verdict on the physician's affirmative defense that liability should be allocated to the detox facility as a *Fabre* defendant. The estate argued, among other things, that the physician failed to meet his burden to prove that the detox facility's conduct "caused or contributed to cause the damage involved in the case." The trial court denied the motion.

During closing argument, the estate argued that the physician should be held liable because he violated his duties under sections 464.012 and 458.348.

The trial court instructed the jury that the physician's alleged violation of sections 464.012 and 458.348 was "evidence of negligence," and that if it found that he "violated the statute[s], you may consider that fact, together with the other facts and circumstances in deciding whether [he] was negligent." The physician objected to these instructions. The trial court overruled the objection.

The verdict form asked the jury, "Was there negligence on the part of [the physician] in failing to maintain supervision for directing the specific course of medical treatment rendered by [the ARNP] to [the patient], which was a legal cause of death of [the patient]?" The verdict form then instructed the jury that if they answered yes to that question, they also were to decide if there was negligence on the part of the detox facility which was a legal cause of the patient's death, and if so, to allocate the percentage of liability between the physician and the detox facility. The verdict form also asked the jury to determine the estate's damages.

The jury returned a verdict finding that: the physician's negligent supervision was a legal cause of the patient's death; the detox facility's

4

negligence also was a legal cause of the patient's death; 20% of the liability should be allocated to the physician and 80% to the detox facility; and the estate's damages amounted to $1,312,000.

Post-verdict, the estate filed a motion for judgment notwithstanding the verdict in accordance with its earlier motion for directed verdict on the physician's *Fabre* defense. The estate requested the trial court to set aside the jury's allocation of liability, and enter judgment against the physician in the full amount of the estate's damages. The court granted the motion, and entered judgment against the physician for $1,312,000.

## ***Appellate Analysis***

The physician raises several arguments on appeal. We conclude the trial court erred in three respects: (1) by precluding the physician from testifying that he was not at the detox facility when the patient was admitted, and that he was not notified of the patient's existence until after the patient died; (2) by instructing the jury that the physician's alleged violation of section 458.348 was evidence of negligence, because the estate did not present any evidence that such violation caused or contributed to the patient's death; and (3) by granting the estate's request to allocate 100% of the liability upon the physician, after the jury had found the physician 20% liable and the detox facility 80% liable as a *Fabre* defendant. We address those errors in the order in which they occurred during the trial.

### 1. ***Error in Precluding the Physician's Testimony***

On the first error, although "[t]he determination of relevancy is within the discretion of the trial court," and "an appellate court will not overturn that decision absent a clear abuse of discretion," "[a] trial court's discretion in determining the relevancy of evidence . . . is limited by the rules of evidence and applicable case law." *Thigpen v. United Parcel Servs., Inc.*, 990 So. 2d 639, 645 (Fla. 4th DCA 2008) (citation omitted).

Under this standard, the trial court erred by precluding the physician from testifying that he was not at the detox facility when the patient was admitted, and that he was not notified of the patient's existence until after the patient died.

Section 90.401, Florida Statutes (2017), defines "relevant evidence" as "evidence tending to prove or disprove a material fact." In our opinion, although the argument cuts both ways, a reasonable juror may have considered whether the physician was present or absent when the patient

was admitted as tending to prove or disprove whether the physician negligently supervised the ARNP.

Thus, the trial court erred in precluding the physician from informing the jury that he was not present when the patient was admitted, and did not learn of the patient's existence until the following morning, because the ARNP did not contact him about the patient upon the admission. The error was not harmless, and the evidence was not cumulative. Although other evidence was presented on this point, the physician was not provided the opportunity to testify fully on this key point.

### 2. *Error in Instructing the Jury on Section 458.348*

On the second error, our standard of review was detailed in *Barton Protective Services, Inc. v. Faber*, 745 So. 2d 968 (Fla. 4th DCA 1999):

> A trial court is accorded broad discretion in formulating appropriate jury instructions and its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or *the instruction was reasonably calculated to confuse or mislead the jury*. A decision to give or withhold a jury instruction is to be reviewed under the abuse of discretion standard of review. The party defending the instructions on appeal must show that the requested instructions accurately stated the applicable law, *the facts supported giving the instruction*, and that the instruction was necessary in order to allow the jury to properly resolve all the issues in the case. If the jury instructions, as a whole, fairly state the applicable law to the jury, the failure to give a particular instruction will not be an error.

*Id.* at 974 (emphasis added) (citations omitted).

Here, the trial court's jury instruction on section 458.348 was reasonably calculated to confuse or mislead the jury, because the facts did not support giving the instruction, to the extent causation was an issue.

Section 458.348(4), Florida Statutes (2011), provides, in pertinent part:

> (a) A physician who is engaged in providing primary health care services *may not supervise more than four offices in addition to the physician's primary practice location*. For the purpose of this subsection, "primary health care" means health care services that are commonly provided to patients

6

without referral from another practitioner, including obstetrical and gynecological services, and excludes practices providing primarily dermatologic and skin care services, which include aesthetic skin care services.

(b) A physician who is engaged in providing specialty health care services *may not supervise more than two offices in addition to the physician's primary practice location.* For the purpose of this subsection, "specialty health care" means health care services that are commonly provided to patients with a referral from another practitioner and excludes practices providing primarily dermatologic and skin care services, which include aesthetic skin care services.

(emphasis added).

Although the estate claimed that the physician was subject to subsection (b)'s "two office" limit, while the physician claimed he was subject to subsection (a)'s "four office" limit, the evidence was undisputed that the physician violated either subsection by supervising ARNPs at five to seven different facilities in addition to his primary practice location.

However, the estate presented no evidence to prove that the physician's violation of section 458.348 proximately caused the patient's death. *See Collins v. Sch. Bd. of Broward Cty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985) (to prevail on negligent supervision theory, a plaintiff must prove the basic elements of negligence: (1) a legal duty; (2) the negligent breach of that duty; and (3) that the negligent breach of that duty proximately caused the injury).

More specifically, the estate presented no evidence that the reason why the ARNP did not contact the physician, or that the physician was unaware of the patient's admission, was because he was "spread too thin" or unreachable due to supervising too many offices in addition to his primary practice location. Rather, the evidence was undisputed that the ARNP did not contact the physician about the patient because, as she testified, "[i]n my clinical decision, he was okay to stay. And typically [the physician] would depend on me to be able to see and give a proper and quality assessment, which I did. I could not have known [the patient] ha[d] bacterial endocarditis."

Because the estate presented no proximate cause evidence, the trial court's jury instruction that the physician's violation of section 458.348 was "evidence of negligence," and that if the jury found that he "violated

7

the statute[s], you may consider that fact, together with the other facts and circumstances in deciding whether [he] was negligent," was reasonably calculated to confuse or mislead the jury. Without proximate cause evidence, the jury instruction served no purpose. Thus, the trial court erred in giving the instruction.

This error was not harmless. Because the trial court gave the jury instruction, a reasonable possibility exists that a juror who believed the estate did not prove its negligent supervision claim may nevertheless have held the physician liable simply because he violated section 458.348. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) ("To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict.").

### 3. *Error in Post-Verdict 100% Liability Allocation upon Physician*

On the third error, "[a]n order on a motion for directed verdict or for judgment notwithstanding the verdict is reviewed de novo." *Kopel v. Kopel*, 229 So. 3d 812, 819 (Fla. 2017).

Applying de novo review, we find no error in the court's decision to grant the estate's motion for judgment notwithstanding the verdict in accordance with the estate's earlier motion for directed verdict that liability should not be allocated to the detox facility as a *Fabre* defendant, because both sides presented witnesses who testified that checking on the patient later in the night would not have changed the outcome.

However, the trial court, upon granting the estate's motion, erred in granting the estate's request to allocate 100% of the liability upon the physician, instead of ordering a new trial.

We base our conclusion upon our sister court's decision in *Foreline Security Corp. v. Scott*, 871 So. 2d 906 (Fla. 5th DCA 2004). In *Foreline*, after the defendant pursued a comparative negligence theory of liability against a nonparty throughout trial, the trial court instructed the jury that the trial court would "take into account" the jury's fault allocation in entering the final judgment. *Id.* at 911. After the jury returned a verdict finding the defendant and the nonparty equally liable, the trial court made a post-verdict determination that the defendant alone was one hundred percent liable for damages. *Id.*

The Fifth District concluded that the trial court erred in reallocating the jury's fault allocation.  *Id.*  The Fifth District reasoned that the trial court misled the jury into believing its verdict would control the outcome and, as such, that liability would be distributed equally between the defendant and the nonparty.  *Id.*  This was problematic because "[t]he jury may have reached a different verdict on damages had it known that [the defendant] would bear the entire amount."  *Id.*  The Fifth District remanded the case to the trial court for retrial.  *Id.*

Similarly, here, the jury was told: "And if you find that the employees of [the detox facility] were negligent . . . in any degree, the Court in entering judgment will reduce the total amount of damages by the percentage of negligence which you find caused by the employees of the [detox facility]."  Applying the reasoning in *Foreline*, the jury may have reached a different verdict on damages had it known that the physician would bear the entire amount.  The trial court's proper remedy, upon setting aside the jury's verdict allocating fault to the detox facility, should have been a new trial.

## *Conclusion*

Based on the foregoing errors, we reverse and remand for a new trial.  We conclude without further discussion that all other arguments of error which the physician raises lack merit.

*Reversed and remanded for new trial.*

GROSS and CONNER, JJ., concur.
GERBER, C.J., concurs in part and dissents in part with an opinion.

GERBER, C.J., concurring in part and dissenting in part.

I concur with the majority's opinion to reverse for a new trial based on the three errors discussed above.

I respectfully dissent in part because the trial court committed a fourth error, that is, by denying the physician's motion for partial summary judgment, which argued that, as a physician, he owed no duty of care under section 464.012, because ARNPs are the subject of that statute.

Our review of the trial court's denial of summary judgment involving statutory interpretation and duty of care is de novo.  *See Major League Baseball v. Morsani,* 790 So. 2d 1071, 1074 (Fla. 2001) ("The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo."); *BellSouth Telecomm., Inc. v.*

9

*Meeks,* 863 So. 2d 287, 289 (Fla. 2003) ("Statutory interpretation is a question of law subject to *de novo* review."); *Moore v. State, Fla. Fish & Wildlife Conservation Comm'n,* 861 So. 2d 1251, 1253 (Fla. 1st DCA 2003) ("Duty of care is a question of law and as such our review is *de novo.*").

Applying de novo review, "[t]he law is settled that *a statute creates a duty of care upon one whose behavior is the subject of the statute* to a person who is in the class designed to be protected by the statute, and that such duty will support a finding of liability for negligence when the injury suffered by a person in the protected class is that which the statute was designed to prevent." *Palmer v. Shearson Lehman Hutton, Inc.,* 622 So. 2d 1085, 1090 (Fla. 1st DCA 1993) (emphasis added).

In my opinion, section 464.012 does not create a duty of care upon physicians, because physicians' behavior is not the subject of section 464.012.

Chapter 464 is entitled "Nursing." Section 464.001, Florida Statutes (2011), states that chapter 464's Part I is entitled the "Nurse Practice Act." Section 464.002, Florida Statutes (2011), states:

> The *sole legislative purpose* in enacting this part is to ensure that every *nurse* practicing in this state meets minimum requirements for safe practice. It is the legislative intent that *nurses* who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.

(emphasis added).

Further, section 464.012, Florida Statutes (2011), proscribes the steps by which a nurse may become certified as an "advanced registered nurse practitioner" (ARNP), and describes the acts which an ARNP may perform. As a prelude to describing the acts which an ARNP may perform, section 464.012(3), Florida Statutes (2011), provides:

> An advanced registered nurse practitioner shall perform those functions authorized in this section within the framework of an established protocol that is filed with the board upon biennial license renewal and within 30 days after entering into a supervisory relationship with a physician or changes to the protocol. The board shall review the protocol to ensure compliance with applicable regulatory standards for protocols. The board shall refer to the department licensees

submitting protocols that are not compliant with the regulatory standards for protocols. *A practitioner currently licensed under chapter 458, chapter 459, or chapter 466 shall maintain supervision for directing the specific course of medical treatment.*

(emphasis added).  It is from this single emphasized sentence that the estate argued, and the trial court found, a statutory duty of care exists under section 464.012 for those physicians who supervise ARNPs.

I disagree with that finding.  Given chapter 464's title of "Nursing," chapter 464's Part I title of "Nurse Practice Act," section 464.002's plain language statement that the "*sole legislative purpose* in enacting this part" is to regulate nurses, and section 464.012's wholesale discussion of ARNPs, it cannot be logically concluded from the single emphasized sentence that physicians' behavior is the subject of section 464.012, from which a duty of care may be created upon physicians.

Rather, ARNPs' behavior is the subject of section 464.012, from which a duty of care may be created upon ARNPs.  As applied, if an ARNP performs acts *not supervised* by a practitioner currently licensed under chapter 458, chapter 459, or chapter 466, then an ARNP may be held liable under section 464.012.  *Cf. Siegel v. Husak*, 943 So. 2d 209, 213-14 (Fla. 3d DCA 2006) (ARNP owed no specific duty to patient when ARNP was "acting under the specific direction and orders of [the physician] when she made her 'nursing diagnosis.'  The actual responsibility for the diagnosis lay with [the physician].").

Based on the foregoing, I would reverse for a new trial on not just the three errors discussed in the majority opinion, but also on this fourth error.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**

11